JAMES L. PEAKE vs. JOHN T. REDD.

1. If a county court makes an order allotting a widow dower in the slaves of her deceased husband, without the notice required by statute to be given to the executor, administrator and *persons* interested, it is void. No presumption that such notice has been given will arise where the *record* is silent.

2. A final order of a county court cannot be set aside at a subsequent term, merely upon the ground of error.

ERROR to Marion Circuit Court.

PRATT, BUCKNER, GLOVER & CAMPBELL, for plaintiffs in error.

I. The action of the county court, setting aside and annulling the supposed allotment of dower in the slaves of the deceased, under the order of Nov. 13, 1839, to Penelope Francis was legal and proper. 1st. Because the said order of 13th of Nov. 1839, appointing commissioners to assign dower in the slaves, was made without application therefor by any party in interest to the court; and without ten days notice to the administrators or heirs of said Th. Francis, deceased; or to the guardians of such heirs; and consequently was null and void without any action of the court. See an act respecting an act entitled "an act respecting partition and dower in slaves," Session Acts, 1837, page 61. We concede that a judgment not void upon its face, cannot be questioned incidentally or collaterally, as was ruled in 4 Bibb. R. 336, but here the proceeding was direct, to vacate the supposed judgment or order, on the ground that it was void on its face for want of notice, as required by the statute of the Common Law. See Puttle's Dig. vol. 2, page 17, note 12 and 15, "a judgment rendered in an original action without service of process is a nullity" In Soulden & Co. vs. Cook, 4 Wend. R. 218, it was on motion to set aside judgment on *scire facias*;—held, that had the defendant not been arrested, the motion would have been entertained. "Judgment was set aside after enquiry executed, it appearing that one of the defendants had no notice of the writ or declaration." 2 Cow. & Hughes, page 845 (a), note 2, citing 1 Barnes.

"It is a rule of law," says Starkie, (vol. 2, Law of Ev.,) "founded on the first principle of natural justice, that no judgment shall be pronounced against any one who has not had notice of the proceedings, and an opportunity to defend himself." See 7 Term R. 363; 4 Burr. R. 2244.

2nd. The report of the commissioners was void, because they were not legally appointed, the appointment being null and void, the report must be so too

Peake vs. Redd.

3d. But supposing the order appointing the commissioners was void, and the report of the commissioners was valid, said report was never made the judgment of the court, and was invalid as an allotment of dower in the slaves. It was neither "confirmed" nor "rejected." See Session Acts, 1837, p. 61.

4th. The county court had no power to allot to the widow one-third of the slaves of the deceased, the statute allowing her only a child's part, which in this case is one-third of the estate. See Session Acts, 1837, p. 61. The court only has power to award the "just rights" of the parties.

II. The action of the county court in setting aside and annulling the order of Feb. 25, 1843, distributing slaves and personal estate, was legal and proper.

1st. Because no notice of the intended application to procure said order was ever given to the administrators or either of them—as required by the statute. See Session acts 1837, p. 61. The administrator holds the legal title of the entire personal estate for the payment of debts; and any proceeding divesting him of this title without notice and in his absence is equally void by the statute, and the highest considerations of public policy.

2nd. Because, if there was any notice given to any of the parties in interest, it was a partial notice only, not extending to nine of the heirs, Nancy Jane Francis, an infant, Mrs. Graves, Mrs. Peak, Mrs Ousley or Mrs. Bryant, who were the heirs, and entitled to notice by the statute; nor to Wade H. Pollard or wife, nor to Sarah, William or James, the three last infants, nor to the guardians of such infants· "Ten days notice shall be given of every application for such partition and assignment, to the executor or administrator, and to all the heirs and legatees interested therein, or their guardians, or agents, and if any be non-residents, &c." See Session Acts 1837, page 61. We contend that a notice, in this case, to an infant is no notice, unless served on the guardian of such infant.

3d. But there was no legal notice to any of the persons in interest; the affidavit of Hunt is a nullity, certifying that he orally, as we must conclude, notified, &c. See Rev. Code, 1835; Practice at Law, p. 451, sec. 18, sec. second.

4th. The county court had no power to allot to the widow one-third, when her just right was only one-third of the estate. The defendants contend that the court had no power over after the term at which it was granted; and this is granted by us, if the order was valid when made; but if void ab initio, as in this case, it may be set aside on motion or may be treated as a nullity, all persons attempting to execute it, being trespassers, and liable as such.

III. The defendants will insists that the county court had no jurisdiction of the motion to set aside said orders after the term at which they were made. That their action on said motion was a usurpation of power. Should this court concur with them in this view, we shall insist that no appeal lay to the circuit court, and the circuit court erred in taking cognizance of the appeal, and in reversing the action of the county court. The order of the county court setting aside another order, is not one of the cases in which an appeal lies. Rev. Code, 1835, page 63, Administration, art. 8, sec. 1. If the court exceeded its jurisdiction, the remedy was by writ of prohibition, not appeal. 2 Chitty's Gen. Practice, 355-6; Tuck. Com. 203; 2 Cov. & Hughes, 1098.

IV. The circuit court never had jurisdiction of the case, because there never was in fact an appeal lawfully granted; the statute provides that the appeal shall be perfected at the same term in which the decision complained of was made: here the appeal is not granted at all, save on a condition which is to be supplied in vacation. See Rev. Code, 1835, page 63, art. 8, sec. 2, 3, 4.

V. That no appeal would lie from the decision of the county court in this case is most manifest from 8th sec. of the 8th art., Law of Administration, page 63 Rev. Code, 1835, which declares that "on every such appeal, the circuit court shall determine the points or decisions excepted to, and if it be of opinion that the county court erred" * * * "a new trial shall be granted;" now if the circuit court was of opinion that error had been committed in this case, how could a new trial be granted?

VI. There is no case, save by the bill of exceptions, made in the county court.

## Redd, for defendants in error.

The defendants contend that the circuit court did not err in overruling and dismissing the plaintiff's motion.

The plaintiffs do not allege in their motion any want of jurisdiction, either as to the subject matter or parties, neither do they allege that the allotments of dower made in 1839, was not affirmed by the court.

The motion makes no objection to the distribution, except the errors of law in giving the widow one-third, instead of a child's part, and acts upon that alone as the ground of relief. On this point the defendants hold the rule to be that no court of record can after the term is past, annul its own judgment and unsettle the rights of the parties under it because of an error of law.

In laying down the English doctrine, Lord Coke observes that "during the term wherein a judicial act is done, the record remaineth in the breast of the judges, therefore the roll is alterable during that term, but when the term is past, then the record admitteth of no alteration, averment or proof to the contrary." Coke Litt. 260, a; Blackamore's case, 4th Coke Rep. part 8, page 156-7 ; Croke El. 497, Harcourt vs Bishop; 1 Wilson Rep. 61 ; 2nd Strange 1110 ; 2nd Wm. Black Rep. 1300 ; 1st Ld. Raym. 182; 3d Bramwell & Cross 235.

American decisions affirm the same doctrine. Court observes in Loring vs. Monsfield, 17 Mass. Rep. 312, that the merits of a judgment can never be overhauled in a new proceeding ; otherwise there would be no end to legislation. See, also. 1 Mo. Rep. 202; 6 Mo. Rep. ; 7 Mo. Rep, 320; 12 Mass. Rep. 268-9; 1 Peck's Rep. 441; 3d Cond. Rep. S. Court of U. S. 339; 3 John 369; 12 John. 312.

This being a new proceeding, instituted nearly five years after the allotment of dower, and nearly two years after the judgment of distribution moving the court to overhaul their judgment and to alter it, so as to give the widow one-thirteenth of the estate instead of one-third, the circuit court under the act passed, requiring it to render such judgment as the county court ought to have rendered, could not do otherwise than overrule the plaintiff's motion and dismiss it.

It would be error to set aside the judgment of distribution and charge the administrator with the amount paid to the widow (under and in accordance with that judgment) over and above the one-thirteenth as devastavit.

The administrator has delivered the slaves and paid the money (with the exception of a small balance) to the widow, as will appear by reference to his settlement in which the court has given him credit upon the production of receipts, and of which payment and delivery is not controverted in the plaintiff's motion.

Our statute makes him a ministerial officer of the court by requiring him to obey its order and execute its judgments under the penalty of an imprisonment of his person and a sequestration of his goods and chattels.

The law will not make it his duty to deliver property and pay out money to the widow and distributees, under the judgment of the court, and then charge him, as in the case of a *devastavit* because the court erred in allotting to the widow more than her share. He is within the reason and within the rule protecting a sheriff or another officer, or even a private citizen, whose duty it is, to execute the mandate of a court.

That rule, as laid down by Lord Coke, is, "If the court has jurisdiction of the cause (i. e. the subject matter) and proceeds erroneously, the officers will be protected ; but if the court has no jurisdiction, the whole proceeding is *coram non judice*, and he who executes its order is a trespasser." In illustration he says, "as if the court of common pleas holds plea of an appeal of death or robbery, and defendant is attainted, it is *coram non judice*, (that court having no criminal jurisdiction,) but if the same court in a plea of debt award a capias against a Duke or an Earl (which doth not lie against them) and the sheriff arrests them, he will be protected though the writ is against law, and though the error appears on the face of the writ, because the court has jurisdiction of the cause." See 5th vol. Coke's Rep. part 10, page 76.

The reason of this rule (i. e. that the law will not require a party to obey the mandate of a

6

court, and then leave him defenceless,) extends the rule itself to a private citizen, acting in aid of the officers. Croke charles 446; 1st Saukeld 409; Lord Raym. 633: 9 John. 229-30 31.

This rule applies to administrators, were it otherwise there would be no safety. The court in a regular proceeding makes its order requiring the administrator to distribute the estate.

The law arms the court with the power of attachment and sequestration. He delivers the property and pays the money in accordance with the order. Years after, when the slaves have perished, and some of the parties have become insolvent, it is discovered that the court allotted to one of the insolvent parties more than his share. Thereupon, the court sweeps the whole matter from its record, and orders the administrator to produce the money and property for a new distribution.

Were it possible for him to comply, the new judgment might be as defective as the old one; another proceeding might be instituted to vacate that. One proceeding would be a precedent for the other. There would be no end to legislation, nor to the liability of the administrator. Old judgments might be vacated and new ones rendered in their stead ad infinitum.

NAPTON, J., delivered the opinion of the court.

Much of the difficulty in this case grows out of the confused state of the record. The legal principles upon which the case turns are sufficiently obvious, if the true history of the case could be gathered from the record. As far as this can be done, we infer the facts to have been about as follows.

In 1839, upon the death of Thomas Francis, John T. Redd, who had married one of his daughters, was appointed administrator of his estate. In November of that year, the county court appointed commissioners to assign to the widow her share of slaves belonging to the estate. The commissioners estimated the value of the slaves at $5000, and allotted one-third to the widow as her dower. In January, 1841, commissioners were appointed to make partition among all the heirs, and also to assign the widow her dower. These commissioners in March of that year reported the slaves not divisible in kind. From this period until the 25th Feby., 1843, various steps were taken and orders made; but upon this day the court made a final order of distribution, allowing one-third of the personal estate to the widow and distributing the residue among the heirs at law.

At the November term, 1844, the distrubutees appeared in court and filed a petition or motion to set aside the allotment of one-third to the widow as her dower instead of one-thirteenth, as it should have been. This motion was sustained, and an appeal taken to the circuit court, which latter court reversed the order of the county court last named and ordered the original allotment to stand.

It does not appear from the record, that any notice was given, as the law required, prior to the first order made in Dec., 1839, for the appointment of commissioners to allot the widow's dower. The act of

Feb. 6th, 1837, under which this order was made, directs "that 10 days notice shall be given of every application for such partition and assignment to the executor or administrator and to all the heirs and legatees interested therein, on their guardians or agents."

So far as this order of 1839 is concerned, the record shows no notice of any kind.

Had the case remained in this position, the propriety of the action of the court in 1844, in vacating this order, would be obvious. The acts of a court of record must be shown by the record itself; nor will any presumption of notice arise where the record is silent.

But the subsequent proceedings of the county court, though involved in some obscurity, are sufficiently set forth by the record to show that before the final order made in Feb., 1843, all the parties in interest were actually before the court. The final order allotting one-third of the slaves to the widow was not made until 1843, when the estate was distributed to all the heirs. It is true that the allotment of one-third in 1839, was the basis of all the subsequent proceedings in that court, or before commissioners appointed by that court; but this error in the allotment of 1839, as well as in the subsequent proceedings, was obviously the result of a misunderstanding of the law, both by the court and all the parties to the proceedings and not occasioned by any want of notice. In relation to the final order, the record says, "It appearing to the satisfaction of the court that due notice has been given of the intention to make this application, and nothing to the contrary having been shown, &c."

This question of notice is the only one presenting any difficulty in the case, but taking the above statement made on the record, in connexion with the various notices and appearances also recorded, we have concluded that there is no ground for complaining now of a want of notice. In truth the ground upon which the motion was based in the county court was not a want of notice, but an error of law. It is quite apparent that this was the real cause of complaint, and that want of notice is a mere afterthought.

There is no question as to the conclusiveness of the final order made in 1843, if the parties had the notice. A final order of a county court cannot be set aside at a subsequent term, merely upon the ground of error. There would be no end to legislation if county courts or any other courts, could renew their own acts from term to term, and correct supposed errors in their past decisions. The matter is beyond their reach.

Let the judgment of the circuit court be affirmed.