———o———

THE STATE OF MISSOURI, *ex rel.* THE ST. JOSEPH & IOWA RAIL ROAD COMPANY, Respondent, *vs.* THE COUNTY COURT OF SULLIVAN COUNTY, Appellant.

1. *Practice—Supreme Court—Exceptions, none taken—What errors examined.*—Where no exceptions are taken at the trial, or saved to the rulings of the Court, only such errors will be examined on appeal as appear on the face of the record.

2. *Practice, civil—Jeofails—Statute of.*—The rule as settled under our statute of amendments and jeofails, (W. S., 1036, §. 19,) is, that although a statement may be defective, yet as it appears, after verdict, that the verdict could not have been given or judgment rendered without proof of the matter omitted to be stated, the defect will be cured by the statute.

3. *Judgment—Order final, in nature of—Not set aside at subsequent term.*—A final order is in the nature of a judgment and cannot be set aside at a subsequent term on the ground of error.

**4.** *Railroads—County subscriptions to—Vote of people as to—Constitution, etc.—* The Charter of the St. Joseph & Iowa Railroad Company, (Sess Acts, 1856–7, pp. 107, 108,) authorized it to establish branches, and receive county subscriptions, although the counties subscribing had not been empowered thereto by a vote of the people. Article 11, section 14, of the present constitution was not intended to retroact so as to have any controlling application to laws in existence when that instrument was adopted.

### *Appeal from Sullivan Circuit Court.*

*A. H. Vories, Vineyard, Young and M. Oliver, et al.,* for Appellant.

So far as appears from the allegations in the petition, at the time that the present constitution went into effect the act of the Legislature organizing the St. Joseph and Iowa Railroad Company had ceased to have any vitality by its own limitation, and the counties had no more right or power, to take stock therein, than if the act had never been passed : so that there was nothing to prevent the Constitution taking full effect in its prohibitions against the subscribing of stock by the Counties. In view of this fact the Legislature, on the 9th day of March, 1866, passed an act to amend the charter of the St. Joseph and Iowa Railroad Company, the preamble of which shows that said Company had been prevented from completing the road as required by the terms of its Charter, and the fact is that the construction had not been commenced then, nor on the 1st day of May 1871, when said stock was attempted to be subscribed. This shows that it was admitted and legislatively declared that the Charter had been forfeited, and therefore that the act then about to be passed, was an attempt to revive a defunct charter. And the after provisions of the act carry the same conviction. (See Sess. Acts 1865-6, 223, §§ 1, 5.)

But the subscription under consideration was never made, nor intended to be made to the road under the act of 1857 chartering the St. Joseph and Iowa Railroad Company. Neither in that Act, nor in any Act amendatory thereof, can there be found any authority for said Company to build a branch road.

The fact is, that the road to which, and to the use of which

the subscription was pretended to have been made, and in which Sullivan County was to have become a stockholder, is a road attempted to be organized under an Act, March 21st, 1868. (See Sess. Acts of 1868, pp. 90 and 91.)

There is no allegation in the petition that the line of the road as designated by the Act, was never marked, or surveyed, or located so as to advise the Court whether the route of the road ran through, adjoining, or near the County of Sullivan.

By the terms of the Act, only the County Courts of the counties *through, adjoining, or near* which (see § 6) the route of the road passed could subscribe for stock. Hence the petition is fatally defective.

The Saline County case, (*vide ante,* p. 350) fully settles this case against the relator. See Steines *et al.,* vs. Franklin, 48 Mo., 167; State *ex rel., etc.* vs. Calloway County *vide ante,* p. 395,

*G. D. Burgess and A. W. Mullins,* for Respondents.

I. The appellant had no power or authority to rescind the order subscribing stock to the Railroad Company, at a term of its court subsequent to that at which the subscription was made and entered upon the Company's book, and the subscription accepted. (Peak vs. Reed, 14 Mo., 79.) Much less could such rescission be made after the relator had done, and caused to be done, a large amount of work, and expended a great deal of money and incurred heavy liabilities in consequence of such subscription and upon the faith thereof. (Workman vs. Campbell, 46 Mo., 308.)

II. The power of the legislature of this State, before the adoption of the new constitution, to authorize counties and also incorporated cities and towns, to subscribe for stock in railroad companies, has been uniformly upheld and affirmed by this court; and it was unnecessary to submit the matter to a vote of the people unless it had been expressly required by the legislative enactment. (Kansas City, St. J. & C. B. R. R. Co., vs. Alderman, *et al.,* 47 Mo., 349; State, *ex. rel.,* M. &. M. R. R. Co. vs. Macon Co. Ct., 41 Mo., 453; City and County of St. Louis vs. Alexander, 23 Mo., 483.)

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding in the Circuit Court of Sullivan county, by *mandamus*, to compel the County Court of that county to issue bonds to the amount of $200,000 in compliance with an order of that court, made on the first day of May, 1871, subscribing said amount for and in behalf of said county to the capital stock of the St. Joseph and Iowa railroad company.

The alternative writ sets out the corporate character of the relator, and states in substance that at a meeting of the board of directors, held at St. Joseph in March, 1871, the company projected and undertook the construction of a branch railroad, to be known and designated as the Central North Missouri branch of the St. Joseph and Iowa railroad, said branch road to be built from a point of intersection with the main line of the St. Joseph and Iowa railroad, at or near the town of Unionville, in the county of Putnam, in this State, and running thence southwesterly, through the counties of Putnam, Sullivan, etc.

It is alleged that the County Court of Sullivan county, at a regular term held on the first day of May, 1871, acting under and in pursuance of law, and by the authority of the provisions contained in the charter of the relator, made an order of record subscribing for and in behalf of said county the sum of $200,000 to the capital stock of the relator, for the said branch as above designated. The order reads as follows: "It is ordered by the court here that the county of Sullivan subscribe, and the court does hereby for and in behalf of said county, subscribe two hundred thousand dollars to the capital stock of the St. Joseph and Iowa railroad company, in the name and for the use of the Central North Missouri branch of the St. Joseph and Iowa railroad company, to aid in the construction of said branch railroad through the county of Sullivan, and that the subscription hereby made shall be paid by said county by issuing and delivering, upon the terms and conditions hereinafter specified, the bonds of said county, made by its County Court and duly signed by the presiding justice of said court,

and attested by the clerk thereof with the seal of said court affixed ; which said bonds are to be of the denomination of one thousand dollars, and to become due and payable twenty years after the date thereof, bearing interest at the rate of seven per cent. per annum from the date, payable semi-annually, with coupons for interest to be attached or annexed to said bonds ; said bonds when issued are to be placed in the hands of Warren McCullough, as trustee for said county and the Burlington and Southwestern railway company, which said bonds are to be delivered to the Burlington and Southwesten railway company, subject to the conditions and in the manner following : That the work of constructing said branch railroad in the county of Sullivan shall be begun by said Burlington and Southwestern railway company within six months from the first day of May, 1871, and the construction thereof completed, with the rolling stock thereon, through said· county, within twenty-one months from the time of commencing the work ; and that as soon as the work of grading on said road shall be commenced in said county, then the bonds in payment of said subscription are to be issued and placed in the hands of said trustee ; and as soon as one-fourth the cost of said work in said county is completed, as shown by the report and certificate of the engineer in charge of the work, and said work paid for by said company, then the said county through said trustee, shall deliver to said Burlington and Southwestern railway company forty thousand dollars of said bonds ; and when one-half of said work is completed and paid for by said Burlington and Southwestern railway company, then the county is in like manner to deliver forty thousand dollars more of said bonds, and so on until the road is completed through the county and paid for by said company, with the iron and rolling stock thereon, when the last installment of said two hundred thousand in bonds is to be delivered to said company. Provided, however, that the said bonds are not to be delivered to said company with overdue or half-matured coupons attached thereto ; but such coupons are to be detached from said bonds and retained by said trustee for cancellation.

" And it is further hereby provided that said subscription is made upon condition that said railroad shall be permanently located and constructed so as to pass within a distance not exceeding eight hundred yards from the court house in the town of Milan, in said county; and that there shall be within the distance above named from said court house a general freight and passenger depot, built and maintained by said company as soon as said road is ironed and operated through said county; and that in the event the said Burlington and Southwestern railway company fail to commence said work and prosecute the same to completion within the time herein limited, then this court shall be authorized to rescind this order and make the same null and void."

It is also alleged that in pursuance of the above order, the County Court, on the first day of May, 1871, entered the subscription of Sullivan county on the subscription book of the said company, and that on the same day the said St. Joseph and Iowa Railroad Company accepted the said subscription on the terms and conditions set forth in the above recited order; that immediately after the making and acceptance of said subscription, and prior to the 4th day of September, 1871, and upon the faith thereof, the said Burlington and Southwestern Railway Company did commence the work of surveying, locating, grading and constructing the said road in the county of Sullivan, and have worked continually at the same, and now have a large force employed in locating, grading and constructing the road in said county; and that the relator and the said railroad company have, upon the faith of said subscription, laid out and expended large sums of money in the location and construction of the road in Sullivan county, and have made divers contracts and incurred great liabilities for the construction of the road in said county, in consequence of the subscription, and that the contracts were made and the liabilities incurred prior to the 4th day of September, 1871. That on the 4th day of October, 1871, the relator demanded of the County Court that it should issue the bonds in pursuance of its order, and place them in the hands of Warren

McCullough, the trustee named in the subscription; but the court refused and still refuses to issue the bonds, for the alleged reason that the order of subscription has become null and void, because the court, at the August adjourned term, on the 4th day of September, 1871, rescinded and revoked said order.

The return of the respondents to the writ admitted making the order of subscription, and that said subscription was duly entered upon the books of the company; but averred that the order was not made in pursuance of law, or by virtue of any authority contained in the charter of the Company; that said Central North Missouri branch of the railroad company was not organized or entitled to receive subscriptions to its capital stock until the 25th day of March, 1871, and that the order and subscription were made on the 1st day of May, 1871, without the direction of two-thirds of the voters of the county; and that under the constitution of the state no subscription was valid unless two-thirds of the qualified voters assented thereto.

For further answer respondent denied all knowledge or information as to whether the construction of the road had been commenced; alleged that the order authorizing the subscription had been rescinded; that a prior subscription had been made to the capital stock of the Quincy, Missouri and Pacific railroad, and that the aggregate subscription to both roads exceeded ten per cent. of the assessed taxable property in the county, and the last subscription was, therefore, void.

To this return a replication was filed, which constitutes a denial of the main issues tendered.

Upon a hearing of the cause the court found for the plaintiff, and awarded a peremptory writ of *mandamus*. The bonds were issued and placed in the hands of the trustee, but subsequently an appeal was granted by a former judge of this court in vacation.

No exceptions were taken at the trial or saved to the rulings of the court, and we can therefore only examine such errors as appear upon the face of the record.

It is contended in the argument that facts are not stated

showing such a compliance with the terms of the order and subscription in the matter of location as would entitle the relator to the bonds, in this; that it is not alleged that the road has been located within eight hundred yards of the Court House, in the town of Milan. But the relator is not asking for the absolute delivery of the bonds to itself. It only demands that they shall be issued and placed in the hands of the trustee, to be used according to the terms agreed upon between the parties and pursuant to the provisions of the subscription. The condition is that as soon as the work of grading on the road shall be commenced in the county, then the bonds in payment of said subscription are to be issued and placed in the hands of the trustee, to be paid out as thereinafter provided, as the work progressed. There is an express averment of the commencement of the work according to these terms, and the court must necessarily have found a compliance on the part of the relator when it ordered the writ. The presumption is in favor of its decision. Besides, the rule, as settled under our statute of amendments and jeofails is that, although a statement may be defective, yet, if it appears after verdict that the verdict could not have been given or the judgment rendered, without proof of the matter omitted to be stated, the defect will be cured by the statute.

The point insisted upon that the subscription made the amount more than ten per cent. of the assessed value of the property of the county, was a question of fact to be determined by the court below; and as the question is not in any manner saved, we cannot review it.

It was incompetent for the court to set aside or rescind its order made at a previous term. A final order is in the nature of a judgment, and cannot be set aside at a subsequent term on the ground of error. (Peake vs. Reed, 14 Mo., 79.)

But the real question in the case is, whether the relator's charter authorized it to establish branches and receive county subscriptions without the counties subscribing being empowered thereto by a vote of the people.

The St. Joseph and Iowa Railroad Company was chartered
34—VOL. LI.

by an act approved January 22, 1857. By the third section of the act it is provided that " said company shall have full power to survey, mark, locate, and construct a railroad from the city of St. Joseph, in the county of Buchanan, to such point on the boundary line of this state as they may select, and may extend the same to such point or points in the state of Iowa as they may deem proper, and shall in all things be subject to the same restrictions, and be entitled to all the rights, privileges, and immunities which were granted to the Hannibal and St. Joseph Railroad Company by an act entitled ' An Act to incorporate the Hannibal and St. Joseph Railroad Company,' passed at the session of the General Assembly and approved February 16, 1847, and also by the amendments to the charter of the said Hannibal and St. Joseph Railroad Company, passed at the session of the General Assembly, and approved February 23, 1853, and February 24th 1853, and March 3, 1855, so far as the same are applicable to the company hereby created, (and not inconsistent with the powers hereby conferred), as fully and completely as if the same were herein re-enacted."

The sixth section declares that " it shall be lawful for the County Court of any county in which any part of the route of said road may be, or for the county court of any county adjoining or near the same, to subscribe to the stock of said company."

The act to incorporate the Hannibal and St. Joseph Railroad Company provides as follows : " That it shall in all things be subjected to the same restrictions, and entitled to all the privileges, rights and immunities which were granted to the Louisiana and Columbia Railway Company, by an act entitled ' An act to incorporate the Louisiana and Columbia Railroad Company, passed at the session of the General Assembly, 1836 and 1837, and approved January 27th, 1837,' so far as the same are applicable to the company hereby created, as fully and completely as if the same were herein re-enacted."

The act chartering the Louisiana and Columbia Railroad Company, among other powers delegated to the corporation,

FEBRUARY TERM, 1873.    531

The State *ex rel. etc.*, v. The County Court of Sullivan Co.

says : " They shall have power to extend branches from the point of commencement in said town of Louisiana to any other part of said town ; also to extend a branch or branches of said road into or through the town of Clinton in the same county. They shall also have full power and authority to make any other branches along said road, or at the termination thereof, as they may deem necessary or the public convenience require."

It will thus be perceived that the relator's charter, adopted by the legislature, gave the counties through which its route passed, and those adjoining and near thereto, full authority to subscribe stock without first submitting the matter to a vote of the people. It also gave the company full power to make such branches as it might deem necessary or the public convenience might require. It has always been held that the provision of the constitution, art. 11, sec. 14, was a limitation upon the future power of the legislature, and was not intended to retroact so as to have any controlling application to laws in existence when the constitution was adopted.

Power conferred on counties to take and subscribe stock without a submission to a vote of the people, before the constitution went into operation, remained unaffected by that instrument.

But it is contended that the case is governed by the decision in the State vs. Saline County, *ante*, p. 350. The cases are not parallel. In that case the charter of the railroad provided for building a road to the Missouri River, and authorized the counties through which the route ran to take and subscribe stock without any vote. This was before our present constitution was adopted, and no question was made about the power of the counties along the original line taking stock independent and regardless of any vote. But the legislature, by an enactment subsequent to the constitution's taking effect, amended the charter and extended the road into other counties where no such authority was given, and we held that those last counties could not subscribe for stock without a vote of the people authorizing them to do so, because that power

was not conferred upon them prior to the adoption of the constitution.

But the case here is entirely different. There has been no amendment of the relator's charter. The power was conferred previous to the adoption of the constitution, and that is the only power sought to be exercised.

I am of the opinion that the judgment should be affirmed. All the judges concur, except Judge Vories, who did not sit in the case.