THOMAS (PRATT v.). See Case No. 11,377.

THOMAS (RUSSELL v.). See Case No. 12,-162.

THOMAS (SALT MANUF'G CO. v.). See Case No. 10,956.

THOMAS v. SCHUYLER COUNTY. See Case No. 13,909.

━━━━━

## Case No. 13,909.

### THOMAS v. SCOTLAND COUNTY.

### THOMAS v. SCHUYLER COUNTY.

[3 Dill. 7; [1] 1 Cent. Law J. 216.]

Circuit Court, E. D. Missouri. March Term, 1874.[2]

RAILWAY AID BONDS—CHARTER PRIVILEGE OF RECEIVING SUBSCRIPTIONS — EFFECT OF RAILWAY CONSOLIDATION AND CHANGE OF NAME — STATE DECISIONS, HOW FAR BINDING ON THE FEDERAL COURTS.

1. Although the decisions of the supreme court of a state expounding the effect of the state constitution and laws upon securities issued by a municipal corporation are not necessarily conclusive upon the federal courts, yet they will be followed, unless cogent reasons appear to the contrary.

2. The decisions of the supreme court of Missouri in State v. Sullivan County Court, 51 Mo. 522; Smith v. Clark Co., 54 Mo. 58; and State v. Green Co. (January term, 1874), Id. 540, which hold that a provision in the charter of a railway company granted by act of the legislature, authorizing and empowering counties through which the road shall pass to subscribe for its stock and issue its bonds in payment of the same, is a "privilege" of the railway company, which is not taken away by a subsequent constitutional ordinance, are approved and followed.

3. The charter of the Alexandria and Bloomfield Railroad Company gave the county courts of the counties through which the road should pass power to subscribe to its stock and issue their bonds in payment of the same, without a vote of the people. Subsequently the company was empowered to change its name and extend its line, and its name was accordingly changed. Subsequently authority was given to this company to consolidate with an Iowa company whose road intersected it on the boundary line between the two states, and the consolidation was accordingly effected, and the consolidated company took a new name. After this consolidation the defendant counties issued their bonds to the consolidated company by name, reciting on the face of the bonds the provision in the charter in the original Alexandria and Bloomfield Railroad Company as their authority to do so, and also reciting on the face of the bonds the subsequent change of name of that company, and the final consolidation and change of name. In a suit upon coupons detached from these bonds, it is *held*, on the authority of Nugent v. Supervisors, 19 Wall. [86 U. S.] 241, that the authority to issue the bonds was complete, and that the defendants are liable.

4. The case of Harshman v. Bates Co. [Case No. 6,148] (United States circuit court, Western district of Missouri, November term. 1873), distinguished from the present case.

These are suits on coupons attached to bonds issued by the respective counties to pay for subscriptions to stock in a consoli-

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 94 U. S. 682, and 98 U. S. 169.]

dated railroad company, and are in all es-sential particulars dependent on the same legal questions. The bond in the Scotland county case reads as follows: "United States of America. $1,000. Eight per cent. Railroad Bond. County of Scotland. Twenty-five years. Know all men by these presents: That the county of Scotland, state of Missouri, acknowledges itself indebted to the Missouri, Iowa, and Nebraska Railway Company, a corporation existing under and by virtue of the laws of the states of Missouri and Iowa, formed by consolidation of the Alexandria and Nebraska City Railroad Company, formerly Alexandria and Bloomfield Railroad Company, of the state of Missouri, and the Iowa Southern Railway Company, of the state of Iowa, in the sum of one thousand dollars, which sum the said county hereby promises to pay to the said Missouri, Iowa, and Nebraska Railway Company, or bearer, at the Farmers' Loan and Trust Company, New York, on the 31st day of December, A. D. 1895, together with interest thereon from the 31st day of December, 1870, at the rate of eight per cent per annum, which interest shall be payable annually, in the city of New York, on the 31st day of December in each year as the same shall become due, on the presentation of the coupons hereto annexed. This bond being issued under and pursuant to an order of the county court of said Scotland county for subscription to the stock of the Missouri, Iowa, and Nebraska Railway Company, as authorized by an act of the general assembly of the state of Missouri, entitled 'An act to incorporate the Alexandria and Bloomfield Railroad Company,' approved February 9, 1857. In witness whereof," etc. The petitions alleged the plaintiffs to be holders for value before due. The defendant counties demurred to the petitions.

Bland & Baker, and F. T. Hughes, for plaintiff.

Sharp & Broadhead, for Scotland county.

B. G. Barrow, Edward Higbee, R. Caywood, and E. M. Bradley, for Schuyler county.

[Before DILLON, Circuit Judge, and TREAT, District Judge.]

TREAT, District Judge. Under the decisions of the supreme court of Missouri and of the supreme court of the United States, a bona fide holder of such bonds as those herein question, or of coupons annexed, has a right to recover thereon at maturity, unless there was an absence of authority on the part of the county court to issue them; and the county is estopped by the recitals from disputing that all measures antecedent to the issue were properly and lawfully adopted and pursued when the recitals so state.

When these cases were argued at the last term of this court, several grave questions as to the authority of the respective counties to subscribe to the stock of the consolidated company, and issue bonds in payment of such subscriptions were fully discussed, leaving the court in serious doubt as to the liability of said counties. Since that term, several decisions have been made by the supreme court of Missouri and the United States supreme court upon the disputed points, and a new argument has been had in the light of those decisions.

What our views might have been on the many propositions arising under the state constitution of Missouri and the state statutes, were they before us de novo, is unimportant; for while, in cases like the present, the decisions of the state supreme court would not be conclusive in United States courts, yet they will be, and ought to be, followed, unless very cogent reasons to the contrary appear. The more especially should the United States courts so act, when, under such state decisions, negotiable instruments of the kind sued on have, on the faith thereof, been received in the money markets of the world and passed freely from hand to hand. In the several cases of Iowa municipal and county bonds, the United States supreme court has not only laid down that rule, even disregarding adverse state decisions subsequently made, but has also caused it to be rigorously enforced.

The Alexandria and Bloomfield Railroad Company was chartered in 1857, and in its charter the privilege was given to the county courts of the counties defendant to subscribe to its stock and issue bonds in payment thereof. Subsequently, that railroad company was authorized to change its corporate name and extend its line. The name was duly changed accordingly, as recited in the bonds.

The Missouri supreme court has settled the question that the power given to the county courts by the charter of 1857 for the Alexandria and Bloomfield Railroad Company remained unaffected by the new state constitution; for that power was a "privilege" of the corporation, not impaired or taken from it. Hence, under the several state decisions, especially in the cases against Sullivan, Clark, and Green counties (State v. Sullivan County Court, 51 Mo. 522; Smith v. Clark Co., 54 Mo. 58; State v. Green Co., Id. 540), it must be considered settled that the county courts of Scotland and Schuyler counties respectively had the power to subscribe, without a previous vote of the people, to the stock of the Alexandria and Bloomfield Railroad Company under its changed name of Alexandria and Nebraska City Railroad Company. Indeed, the case against Clark county was under said charter, and is express on that point.

This case is clearly distinguishable from Harshman v. Bates Co. [Case No. 6,148], in the United States circuit court for the Western district of Missouri. In that case the previous vote of the people was essential to the authority to subscribe, and that vote was for a subscription to a specified company. But in the cases now before this court no such proposition is involved, for the power was granted to these county courts

to subscribe and issue bonds of their own motion. These courts could, of their own motion, subscribe to the stock of the Alexandria and Bloomfield Railroad Company, or of the same company under its new name of the Alexandria and Nebraska City Railroad Company, without a previous vote by the people. But the subscription was not made in terms to that company.

Under the act of March 2, 1869, authority was given for the consolidation of that company with any other railroad company in Iowa whose track met at the same point on the boundary line of the respective states. Pursuant thereto the consolidation was had, and the consolidated companies were known as the Missouri, Iowa, and Nebraska Railway Company—the company named in the bonds issued. As reference was fully made to the changed name of the Alexandria and Bloomfield Railroad Company, and to said consolidation, the bondholder was bound, in the light of the law as expounded by the United States supreme court, to look only to the authority of these county courts to make subscriptions to said constituent and consolidated company. The decision in the case against Green county seems to have decided this point; but whether that be so or not, the case of Nugent v. Supervisors, 19 Wall. [86 U. S.] 241, appears conclusive. The previous cases of Clearwater v. Meredith [1 Wall. (68 U. S.) 25], and of Marsh v. Fulton Co. [10 Wall. (77 U. S.) 676], were supposed to hold the opposite doctrine. True, in the Case of Nugent the subscription was made to one of the constituent companies and accepted before consolidation, and the bonds were delivered subsequently to the consolidated company. But when a subscription is made to a specified company which has at the time power to consolidate with another company, that subscription is made in full view of the fact that the consolidation may occur without invalidating the subscription. In the Bates County Case the subscription was not made as the vote of the people required. The stockholders of a constituent company may, by vote, decide whether the consolidation shall be made, and even if a non-assenting stockholder could not be bound by the acts of the majority, he who subscribed to the stock of the consolidated company, after consolidation, could set up no such defense. In Tomlinson v. Branch, 15 Wall. [82 U. S.] 460, and other cases cited, it is clearly established that the new or consolidated company has for its constituent parts all the powers and privileges and exemptions pertaining to the constituents previously. Therefore, if Scotland and Schuyler counties had subscribed to the Alexandria and Nebraska City Railroad Company, and, as stockholders in said company, had voted for the consolidation, they would be in exactly the same position as they are now, viz.: stockholders in the consolidated company by their own consent.

It follows, therefore, that if, when the subscription was to a constituent road, and the delivery of bonds to the road consolidated afterwards, the bonds are obligatory, the subscription and delivery of bonds, therefore, to the consolidated road are equally obligatory. The main consideration is the authority to issue said bonds to the consolidated company. That authority does not depend on the fact of previous subscription to a constituent road subsequently consolidated, as authorized by law at the time the subscription was made, which subscription is, by operation of law, carried over to the consolidated road, but on the fact that the court's authority to issue the bonds was complete, as it had the authority to make the counties stockholders in the consolidated road and issue its bonds in payment of its subscriptions.

Such we understand to be the doctrine established by the United States supreme court in the recent case of Nugent v. Supervisors, in accordance with which the demurrers in these cases must be overruled.

Demurrer overruled.

[These suits were taken to the supreme court by writs of error, where the above judgment was affirmed. 94 U. S. 682; 98 U. S. 169.]