## Case No. 10,257.

### NICOLAY v. ST. CLAIR COUNTY.

[3 Dill. 163.] [1]

Circuit Court, W. D. Missouri. 1874.

MUNICIPAL AID TO RAILWAYS—SPECIAL CHARTERS — CONSTITUTIONAL PROVISION — DECISIONS OF STATE SUPREME COURT—BRANCH RAILROADS.

1. Where legislative power is given to a county court to subscribe on behalf of the county to

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

the stock of a railroad company, without restriction or precedent conditions, and to issue negotiable bonds in payment therefor, and the proper county court issues the bonds, reciting therein that they are issued under an order of said court made pursuant to legislative act conferring the power, a bona fide holder for value is not affected with constructive notice of facts recited in the order contrary to the recitals in the bonds.

[Cited in Harshman v. Bates County, Case No. 6,148.]

2. Legislation of Missouri as to power to municipalities to subscribe to the stock of railways, the constitutional provision of 1865, and the decisions of the supreme court of the state on the subject, reviewed, and those decisions followed and applied.

This is an action [by Albert H. Nicolay] upon coupons originally annexed to bonds issued by the county of St. Clair. The coupons are in the usual form. The following is a copy of one of the bonds, dated July 1st, 1870, from which the coupons in suit have been detached:

"United States of America. State of Missouri, County of St. Clair. County Bond. Interest ten per cent per annum, payable on the first days of January and July.

"Know all men by these presents, that the county of St. Clair, in the state of Missouri, acknowledges itself indebted and firmly bound to the Tebo and Neosho Railroad Company, to the use and in the name of the Clinton and Memphis branch of the Tebo and Neosho Railroad, in the sum of one thousand dollars, which sum the said county hereby promises to pay to the Tebo and Neosho Railroad Company or bearer, to aid in building said branch railroad, at the Bank of Commerce, in the city of New York, on the first day of July, A. D. 1882, together with interest thereon from the first day of July, 1870, at the rate of ten per cent per annum, which interest shall be payable semi-annually, on the first days of January and July of each year, on the presentation and delivery at said bank of the coupons hereto severally subjoined.

"This bond is issued under and in pursuance of an order of the county court of the county of St. Clair, in the state of Missouri, and in pursuance of and by authority of an act of the general assembly of the state of Missouri, entitled 'an act to incorporate the Tebo and Neosho Railroad Company,' approved January 16th, 1860; and of an act of the general assembly of the state of Missouri, entitled 'an act to aid in the building of branch railroads in the state of Missouri,' approved March 21st, A. D. 1868.

"In testimony whereof, the said county of St. Clair has executed this bond by the presiding justice of the county court of St. Clair county, under the order of said court, signing his name hereto, and by the clerk of said court, under the order thereof, attesting the same and affixing the seal of said court."

(The bond is duly signed and sealed.)

The petition states the legal effect of the bond and its recitals, and no question is made as to its sufficiency. Copies of the bonds are filed with the petition.

An answer is filed in denial; and also setting up as an affirmative defense facts intended to show that the county had no power to make the subscription or to issue the bonds. One reason for the alleged want of authority to issue the bonds is that they were issued without any vote of the people, as required by the constitution of the state (article 11, § 14); that the county court of St. Clair county, on January 21, 1870, without any vote of the people of the county, passed and entered of record an order "to subscribe for and take two thousand five hundred shares of the capital stock of the Clinton and Memphis branch of the Tebo and Neosho Railroad Company, each of the denomination of $100, and amounting in the aggregate to $250,000, under and by virtue of the authority in the charter of the Tebo and Neosho Railroad Company, approved January 16, 1860, and under an act of the general assembly of the state of Missouri, entitled 'an act to aid in the building of branch railroads in the state of Missouri,' approved March 21, 1868, and in accordance with the orders of the board of directors of the said Tebo and Neosho Railroad Company establishing the said branch railroad, and authorizing subscriptions to the capital stock thereof, adopted on the 6th day of June, 1870, said stock thus subscribed to be paid for by the issue of the bonds of the county, to be delivered in installments, as the work of graduation and masonry shall be let to responsible persons." The answer contains also an order of the county court, November 1, 1870, reciting that the work of graduation and masonry has been let by the Clinton and Memphis branch of the Tebo and Neosho Railroad Company, and ordering bonds for the $250,000 "to be at once signed, sealed, and delivered to said branch railroad company, or to its financial agents appointed to receive and negotiate the same."

The answer sets up and insists that the subscription was in fact made, and the bonds delivered to the Clinton and Memphis branch of the Tebo and Neosho Railroad Company, and not to the Tebo and Neosho Railroad Company; and alleges that such a subscription is unauthorized, and bonds issued therefor void.

The answer also sets up that after the order of the county court making the subscription as aforesaid, and prior to the issue of the bonds, pursuant to the statutes of Missouri, the Tebo and Neosho Railroad Company, with the assent of its stockholders, sold and conveyed all its rights, franchises, and property to the Missouri, Kansas, and Texas Railway Company (a Kansas corporation), and thereupon ceased to exist, and the county court ceased to have any authority to issue the bonds to the former company or to the branch. The answer concludes by alleging that of all the facts therein stated the plaintiff had full notice.

To the new matter in the answer the plaintiff demurs, and it was on this demurrer that the case was submitted.

Grant & Smith and Dryden & Dryden, for plaintiff.

Phillips & Vest and Nesbitt & Ferguson, for defendant.

DILLON, Circuit Judge. The bonds here in controversy were issued by the county court of St. Clair county, and recite an indebtedness on the part of the county "to the Tebo and Neosho Railroad Company, to the use and in the name of the Clinton and Memphis Branch of the Tebo and Neosho Railroad Company, in the sum of," etc., "which sum the said county hereby promises to pay to the Tebo and Neosho Railroad Company, or bearer, to aid in building said branch railroad."

The bonds also contain this recital: "This bond is issued under and in pursuance of an order of the county court of the county of St. Clair, in pursuance of and by authority of an act of the general assembly of the state of Missouri, entitled 'An act to incorporate the Tebo and Neosho Railroad Company,' approved January 16, 1860, and of an act entitled 'an act to aid in the building of branch railroads in the state of Missouri,' approved March 21, 1868."

The charter of the Tebo and Neosho Railroad Company thus referred to in the bonds, approved January 16, 1860 (Laws 1859-60, p. 402, § 6), prescribes the termini and general course of the main line of the road which it authorized this company to build, and gives to the company express authority to "extend branch railroads into and through any counties the directors may deem advisable," without any limitation whatever.

This charter (section 8) adopts and re-enacts inter alia, section 14 of the charter of "the Osage and Southern Kansas Railroad Company," approved November 21, 1857 (Laws 1857, p. 59), and declares that section. with others "to be applicable to the company hereby incorporated, and all the powers therein contained are extended to the Tebo and Neosho Railroad Company."

The 14th section of the charter of the Osage and Southern Kansas Railroad Company, thus adopted, reads as follows: "Sec. 14. It shall be lawful for the county court of any county in which any part of the route of said railroad or branches may be, or any county adjacent thereto, to subscribe to the stock of the company, and, for the stock subscribed in behalf of the county, may issue the bonds of the county to raise the funds to pay the same, and to take proper steps to protect the interest and credit of the county court."

In 1865 the present constitution of the state of Missouri was adopted, containing the following: "The general assembly shall not authorize any county, city, or town to become a stockholder in, or loan its credit to, any company, association, or corpora-

tion, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto." Article 9, § 14.

At the time the constitution was framed there was a large number of charters in force specially incorporating railroad companies, and authorizing, as in the case of the Tebo and Neosho Company, the county courts of counties along their lines, or branches, or adjacent thereto. to subscribe for the stock of railroad companies, without any limitation as to amount, and without requiring a previous election or the assent of the tax-payers or people of the county. That such extraordinary powers, conferred, without limit or check, upon the small number of persons who compose the county court. would open the door to abuses, to frauds upon the officers and frauds by them, and to extravagant and unwise indebtedness, ought to have been foreseen by the legislature, although in 1860, and prior to that time, the evils which come from unlimited grants of power of this kind were not so well known as at present.

After the adoption of the constitution of 1865, the question as to the effect of the 14th section of the 11th article thereof, above quoted, upon these special charters, came before the supreme court of the state for its judgment. That court held that powers conferred in these special charters upon the county courts to subscribe without a vote of the people, were not repealed or touched by the prohibition of the constitution, its view being that the constitution did not affect existing charters, but only limited the power of the legislature in the future. This point was first decided in the Macon County Case,—State v. Macon Co. Ct. (1867) 41 Mo. 453,—and this is the settled law of the state. Chillicothe & B. R. Co. v. City of Brunswick (1869) 44 Mo. 553; Kansas City. St. J. & C. B. R. Co. v. Alderman (1871) 47 Mo. 349; State v. Sullivan Co. Ct., 51 Mo. 522; Smith v. Clark Co. (decided by the supreme court of Missouri, Nov. 3, 1873) 54 Mo. 58.

In this last case the legislation and judicial decisions of the state on the subject of municipal aid to railways is reviewed by the able judge who delivered the opinion of the court, in which, speaking of this subject, he says: "So that the provisions of the Revised Code of 1855, and the amendatory acts of 1860 and 1861, and the constitutional prohibition, and the legislative adoption of that prohibition immediately after its passage, have been held by repeated adjudications, and without any conflicting opinions of the court or any individual judge thereof, so far as the reports show, not to effect the repeal of the privilege contained in special charters."

Not only so. but the case of State v. Sullivan Co. Ct.. above cited. also decides that under such a charter as the Tebo and Ne-

osho Railroad Company, the county court of a county along a branch railroad may subscribe for the stock of the company and issue bonds therefor. The subscription in this case, which was sustained by the supreme court of the state, was one by the county of Sullivan "to the St. Joseph and Iowa Railroad Company, in the name and for the use of the central branch of the St. Joseph and Iowa Railroad Company"—the same precisely as the one recited in the bonds in question issued by the county of St. Clair.

The decisions of the supreme court of the state, therefore, settle the point that, under the charter of the Tebo and Neosho Railroad Company, the county court of St. Clair county had the power to make, without any vote of the people of the county, precisely the kind of a subscription which the bonds in suit recite they did make, and to issue the bonds of the county therefor. The county court having the power to subscribe and to issue the bonds, and a valid subscription being recited in the bonds, the plaintiff can recover thereon if he purchased them bona fide for value, and without actual notice of any irregularities in the exercise of the power by the county court. The securities are authorized and made to be sold in distant places, and the supreme court of the United States has repeatedly decided that a purchaser of such bonds, while he is bound to ascertain whether the legislature has conferred the power to issue them, is not bound to ascertain whether the local officers intrusted with the execution or carrying out of the authority have properly pursued the directions or requirements of the law authorizing their issue. The cases in the supreme court are collected and stated in Dill. Mun. Corp. § 415 et seq. See, also, Kenicott v. Wayne Co., 16 Wall. [83 U. S.] 452, and Huidekoper v. Buchanan Co. [Case No. 6,847], decided here at this term.

A bona fide purchaser of one of these bonds is not bound to look into the records of the county court which made the subscription, and is not chargeable with constructive notice of their contents; and hence the fact that the order shows that the subscription by the county court of St. Clair county was not to the capital stock of the Tebo and Neosho Railroad Company, but to the stock of the "Clinton and Memphis Branch of the Tebo and Neosho Railroad Company," is no defense, provided the plaintiff is a holder of the bonds for value, without actual notice of this fact.

These views dispose of the only defense which counsel have urged in their briefs, unless actual notice to the plaintiff of the facts set forth in the orders of the county court is intended by the pleader.

If he intends to rely upon constructive notice only, the plea should be modified accordingly; and in that event the demurrer to the answer will be sustained. If he means actual notice, then the demurrer should be overruled; or at least we should consider further, whether, under the charter, or under the act of March 21, 1868 (relating to branch railroads), recited in the bond, or both, there was any power to subscribe by the county to the stock, not of the company, including the branches, but to the stock of the branch alone.

The answer was amended so as to allege actual notice, and afterwards, upon a trial, the plaintiff had judgment, and the defendant sued out a writ of error.

As to bonds issued under the branch railroad act of March 21, 1868, see Washburn v. Cass County [Case No. 17,213].