IN THE MATTER OF THE ESTATE OF PETER BOMINO, DECEASED ; MARIA L. HAIGH *et al.*, *Petitioners, Appellants.*

1. **Probate Court:** JURISDICTION. The probate court has jurisdiction to grant a certificate for the payment to the heirs of an intestate money paid into the state treasury by the administrator under an order of the probate court because there were no known heirs.

2. **Statute of Limitations.** The statute of limitations will begin to run in such case against the heirs only from the time of the publication by the administrator of the special notice required by statute to be given to the unknown heirs of an intestate.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Alex. J. P. Garesche* for appellants.

(1) Conceding there has been an escheat of the personalty, still the heirs are not barred by limitation because (a) some of them are married women, and (b) included in the payment to the state is the sum of $800 net, rents collected by the administrator after Bomino's death and following the land belonged to the heirs ; (c)

VOL. 83—28

the statute required a special notice to be given if no known heirs existed, required the court to make the order of payment only after a year, in meantime directing the administrator to loan out the funds for a fixed term not exceeding one year. (2) But the law of escheats is not the one to be applied here. It refers to estates whereof there are no legal heirs, for this designation includes no heirs capable of inheriting. *Catham v. State*, 2 Head (Tenn.) 553. Escheats are seignoral, not prerogative rights of the crown. There is no escheat of movables. They pass to the crown upon *failure* of heirs as one of its prerogative rights. *Com. v. Blanton*, 2 B. Mon. 397. The right to maintain this proceeding is under the administration law. (3) The heirs by the intestate death of Peter Bomino had vested rights in the estate and these rights could be divested only by due process of law. *State v. Stein*, 2 Mo. 56; *State v. Tedford*, 3 Mo. 75; Mo. Code, 1855, p. 83. There never having been any notice given to these heirs, there has been no due process of law. By the statute two notices were required to be given to them, one in pursuance of sec. 21, Code of 1845, Administration, art. 2, and again one of final distribution; neither of these was given. Conceding that the probate court by its order treated the estate as an escheat, then for it to make the order binding, two jurisdictional facts must concur: That there were no heirs; next that they were notified. For I am willing to accept that the notice by the administrator to unknown heirs required by the statute might be construed to be due process of law—a constructive service to bring them into court. Hence it must appear from the record that there were no heirs; or if heirs but unknown, that they were notified *must* appear on the face of the record. Nothing is to be presumed in favor of such a record. It is that of a court of limited jurisdiction, and it is if valid the absolute confiscation of the rights of the Bomino heirs. *State v. Teulon*, 41 Texas 252; *Fairfield v. Gillifer*, 49 Maine 360; *Peake v. Redd*, 14 Mo. 79; *Valle v. Fleming*, 19 Mo. 460;

*Schell v. Leland*, 45 Mo. 293; *Gibson v. Vaughan*, 61 Mo. 420; *McCoy v. Zane*, 65 Mo. 15; *Colville v. Judy*, 73 Mo. 654.

*D. H. McIntyre*, Attorney General, for the state.

The action of the probate court of St. Louis county in ordering the public administrator to pay the balance into the state treasury was correct. Nothing else could be done; §§ 1, 2, 3 and 4, chap. 61, R. S., 1855, p. 716. (Secs. 5564, 5565, 5566 and 5567, R. S., 1879, are the same except that 3 years in sec. 2 is changed to 2 years in sec. 5565.) The probate court committed no error in rendering judgment against the petitioner. The court had no jurisdiction; sec. 5586, R. S. 1879, same as § 23 chap. 61, R. S., 1855, p. 720. Nor could the circuit court have afforded relief as almost twenty years had elapsed since the death of the intestate. Sec. 5586, *supra*. It, therefore, appears that plaintiff's claim was barred by the statute and that she is without relief. The rents which were paid into the state treasury were repaid by order of court.

PHILIPS, C.—This is a proceeding instituted in the probate court of St. Louis county by the heirs and distributees of the estate of Peter Bomino, deceased, for an order on the state treasurer to pay to claimants as the heirs of said decedent, the balance found by said court to have been due on final settlement and paid into the state treasury. Due notice was given to the circuit or county attorney who appeared and defended for the state. The probate court dismissed the proceeding on the ground that it did not have jurisdiction over the subject matter.

The case, after passing on appeal through the circuit court and court of appeals to this court, is submitted on the following agreed statement of facts: "Peter Bomino, for many years before his death a resident of the city of St. Louis, lived in seclusion, apparently without a friend or relative. In the summer of 1854 he died un-

married and intestate. On the 31st of July, A. D. 1854, Peter B. Garesche, public administrator of the then county, including the city of St. Louis, took charge of his estate. In making the inventory a crock of gold was unearthed in the cellar, and this led to a further search when other crocks were found similarly filled. He left, also, the residence in which he lived. The public administrator aforesaid took charge of the realty and personalty of the said estate. And on the 22nd of September, A. D. 1860, made final settlement showing a balance due to the estate, applicable to distribution, of nine thousand and one and 8-100 dollars, and which by an order of the probate court he was ordered to pay into the state treasury, which order was of the same date as said final settlement and was promptly complied with. Included in said balance was about eight hundred and fifty dollars net rents realized from the residence of deceased : that is after deduction made for taxes, insurance, repairs and commissions.

"The order expresses that it was because there were no known heirs. The settlements of the administrator show that he gave the statutory notices of his taking out letters and for final settlement. But he is long since dead and no notice is filed or charge made in his settlements of notice to the unknown heirs to present themselves, or of any distribution to be made unless the usual notice of final settlement subserve this purpose. Upon such final settlement Edward T. Farish was appointed to take charge of the realty and did so, paying from time to time the net accumulations of rent to the treasurer of the state of Missouri under the order of the probate court. No inquisition was ever had of escheat, and contemporaneously with the present proceeding appellants applied to and obtained of said probate court an order directing the payment to them of the rents thus accumulated since final settlement, and the court granted an order upon the treasurer for those there deposited, and upon Mr. Farish for those not paid over, and the parties promptly com-

plied with the order and made the payment. Later, the appellants, a portion of them as plaintiffs, against the other portion as defendants, brought suit in the circuit court of St. Louis, June term, 1877, for the partition of the realty. Returns No. 43,255 made said Edward T. Farish and Lewis B. Beach, the latter as then circuit attorney of the 8th judicial circuit, as defendants. Judgment of partition was rendered in favor of the appellants, the property ordered to be sold, and the proceeds distributed among the appellants as the rightful heirs of said Bomino. So, too, said Farish and said Beach were notified of the application for payment of rents. And have been also of the institution of the present proceedings.

"This is an application, originally made to the probate court, for an order on the treasurer of the state of Missouri to pay to appellants as the lawful heirs of said Bomino the balance due on final settlement and paid to the treasurer of the state. At the time it was made some of these heirs were and still remain married women. The application was refused by the probate court, and appellants appealed to the circuit court. There the appeal was upon hearing had overruled, and judgment of probate court sustained. Within four days the appellants moved for a new trial which was overruled, exception taken, bill of exceptions filed and the cause appealed to the court of appeals. There, *pro forma*, an affirmance was taken of the judgment of the circuit court and the cause was then appealed to this court.

"Originally the application was made by Maria L. Haigh alone, but subsequently it appeared that other relatives, heirs, survived, alike but not equally entitled; they were all by consent made parties to this proceeding, so that the heirship is admitted. It is also admitted that, at the trial, it was shown that Maria L. Haigh came to the city of St. Louis, a day or two after the order on final settlement and the payment to the state treasurer, applied as heir to be recognized, but that said

Rauduy Garesche, though a lawyer, yet ignorantly told her that it was too late. That she relying upon this desisted from any further attempt till these proceedings were had. And it is further admitted that none of the appellants are or have been residents of the state of Missouri."

I. The principal question involved, therefore, is as to the jurisdiction of the probate court to entertain the application. This turns, of course, upon the statutes applicable to such proceedings. The petitioners contend that the provisions of the administration law apply, while the state, through the circuit attorney, contends that the law of escheats must govern. The administration proceeding in question began under the statute of 1845 and ended under that of 1855. But as both statutes are practically the same, the parties have cited the provisions of the latter statute, and we will cite them accordingly. The provisions relied on by appellants are as follows: "If, upon final settlement, it appear that any legatee or distributee is non-resident, or, from any other cause, is not in a situation to receive his share, and give a discharge therefor, or does not appear by himself or agent to receive the same, the county court shall order the executor or administrator to lend out the money, on good security, for such limited time as the court may direct, not exceeding one year." R. S., 1855, sec. 16, p. 167. "In all cases when the legatee or distributee shall not appear within one year after final settlement by the executor or administrator, and claim his share, the county court shall order the same to be paid into the state treasury." Id., sec. 17.

The following section in each code prescribes what receipts are to be taken, with whom they are to be filed and the manner of ascertaining the balance:

"When any legatee or distributee shall appear and claim any share paid into the treasury, the county court before whom the final settlement was made, being first satisfied of his right, shall grant him a certificate under

its seal; and, on presentation of the certificate to the auditor, he shall draw his warrant on the treasurer for the amount." *Id.*, sec. 19, p. 167.

The provisions of the law governing escheat on which the state relies are as follows:

Sec. 2. "Where there is administration granted, and there are no known heirs or legal representatives of the intestate, or no person shall appear within three years after granting the letters of administration to claim the personal estate of such intestate as next of kin, the administrator, in the settlement of his accounts with the proper court, shall account for all money which may come to his hands as administrator." R. S., 1855, p. 716. Section three regulates the manner of ascertaining the balance, etc.

Sec. 4. "Such administrator shall pay such balance into the state treasury within ninety days after such settlement; and if he shall so pay the same, the treasurer shall grant him duplicate receipts therefor, one of which he shall deliver to the auditor of public accounts who shall grant him a certificate thereof, and credit him with the amount so paid into the treasury, and shall charge the treasurer therewith." *Id.*, p. 717.

Sec. 23. "If any person appear within ten years after the death of the intestate, and claim any money paid into the treasury aforesaid, as heir or legal representative, he may file a petition in the circuit court for the county where the estate is, stating the nature of his claim, and praying that such money may be paid to him, a copy of which petition shall be served upon the Attorney General or circuit attorney, who shall put in an answer to the same." *Id.*, p. 720.

Sec. 24. "The court shall examine the said claim, and the allegations and proofs, and if they find that such person is entitled to any money so paid into the treasury, such court shall order the auditor to issue his warrant on the treasurer for the payment of the same, but without interest or costs, a copy of which order, under the

seal of the court, shall be a sufficient voucher for issuing such warrant." *Id.*, p. 721.

Respondent contends that the provisions of the administration law, from their context, show that they apply exclusively· to the case of resident, known non-resident, and other known persons entitled to distribution or partition; while the provisions of the act concerning escheats apply alone to the case of unknown heirs, to the latter of which the agreed statement of facts shows appellants belong. That section 16 of the administration law aforesaid has reference to known distributees and legatees may be conceded, but it does not necessarily follow from this concession that section 19 is to have the same limited application. It is quite obvious from an examination of the earlier statutes of this state that it was not in the legislative mind that any personal estate of intestates, where there were known heirs, should become the subject of escheat to the state. Ter. Laws, 1824, p. 931, 932; Stat., 1835, p. 246. Those statutes dealt solely with the instance of unknown heirs.

By the act approved January 31, 1843, Laws Mo. 1842, p. 4, it was first provided: " That in all cases, where a legatee or distributee shall not appear within one year after final settlement by the administrator or executor and claim his share, the court having jurisdiction thereof shall order the same to be paid into the state treasury, there to remain, until claimed by the legatee or distributee." The second section of this act declared: " That when any legatee or distributee shall claim any share paid, as aforesaid, into the state treasury, he shall satisfy the court, before whom such final settlement was made, of his right, and the court, being satisfied thereof, shall grant to him a certificate," etc., being substantially the same as section 19 in the statute of 1835, and was, likewise, carried into the statute of 1845. Hence it is argued with great plausibility that section 2 of the act of 1842, referred solely to the new class of unclaimed shares, directed by section 1 to be· paid into the state treasury.

But there are other aspects of this question, growing out of the history of the legislation touching these matters, which show that the conclusion reached by the lower courts is more apparent than sound. Among the recognized canons of interpretation of statutes are the following : The intention of a legislative act may often be gathered from a view of the whole and every part of a statute taken and compared together. When the true intention is accurately ascertained it will always prevail over the literal sense of the terms. The occasion and necessity of the law, the mischief felt, and the object and remedy in view are to be considered. When the expression in a statute is special or particular, but the reason general, the special shall be deemed general, and the reason and intention of the lawgiver will control the strict letter of the law when the latter would lead to palpable injustice, contradiction and absurdity. 1 Kent's Com. 461-2. And when it is doubtful whether a certain thing falls within the terms used in an act it is proper to resort to other statutes to ascertain the intention of the legislature in the enactment of the general statute. *Han. & St. Joe. R. R. Co. v. Shacklett*, 30 Mo. 557. A thing within the intention of the legislature in framing a statute is sometimes as much within the statute as if it were within the letter. *Riddick v. Walsh*, 15 Mo. 519 ; *Schultz v. R. R. Co.*, 36 Mo. 13 ; *State v. King*, 44 Mo. 283.

Applying these just and salutary rules of interpretation to the statute in question, we think the construction contended for by the state is too narrow. We think a reference to the earlier legislation bearing on this matter will demonstrate that no such restricted application was in the mind of the legislature in framing section 2 of the act of 1842. Under the statute in force prior to 1835 the only provision in respect to the disposition of the estates of unknown heirs was in the act concerning executors and administrators (1 Ter. Laws, 1824, pp. 931, 932, secs. 40, 41, 42 and 43), which provided for an

inquisition of escheat as to the realty and for covering into the state treasury the personalty after administration. By the 43rd section it was provided that: "It shall be the duty of the auditor of public accounts when any moneys are paid into the state treasury, by virtue of the preceding section, to credit the estate of the deceased with the amount; and if any heir or legal representative of the intestate, shall appear within ten years after the publication of the notice required by the 19th section of this act, and produce legal proof of his or her right to claim such estate, or any part thereof, to the court out of which the letters of administration issued, such court shall grant him a certificate," etc.

This jurisdiction for the recovery of the money by the heirs, remained in the courts of probate until the statute of 1835. By this latter statute (sec. 14, p. 61, art. 6, concerning distribution of the estate) it was provided that: If after final settlement, etc., it appeared that any distributee or legatee is a non-resident, or from any other cause is not in a situation to receive his share and give a discharge therefor, the court may, in their discretion, order the administrator to loan out the same for a limited time, etc. But there was no provision for covering the same into the state treasury. There appeared, however, in this statute, "An act concerning Escheats," sections 1 and 2 of which are substantially the same as the corresponding sections in the statute of 1855. By the 23d section of the act of 1835, jurisdiction to recover this fund by the heir was conferred upon "the circuit court or court of chancery for the county in which the estate is." The provision found in the administration law of 1824, giving the jurisdiction to the probate court for the recovery of this estate, was omitted in the administration law of 1835. And thus remained the law until the enactment of 1842.

It thus becomes manifest, I think, that when the legislature, in the act of 1842, deemed it wise, in addition to the shares of unknown heirs, to transfer to the

state treasury the estate of distributees and legatees, who did not appear and make claim thereto within the prescribed time, they, also, deemed it wise and expedient to restore the jurisdiction of the probate courts to entertain the petition of the heir for the recovery of *any estate* transferred through the probate court to the public treasury. The second section says "*any share* paid into the state treasury." And I feel the more persuaded of the correctness of this being the legislative intent, on reading sections 21, 22 and 23 of the same administration act of 1855. Section 21 provided, in substance, that if, upon the final settlement of any administrator, etc., it shall appear to the court that there are lands of the estate, "and that there are no known heirs or legatees to receive the same, or that the place of residence of such heirs, etc., is unknown, or if such heir or legatee shall fail to appear to take possession of such premises, for more than one year," the court shall then appoint some suitable person to rent the same out and collect the rents, and account therefor to the county court. Section 22 provided for covering such rents into the state treasury if not claimed after one year, etc. The 23d section provided that: "Any money paid into the treasury, under the provisions of the two preceding sections, may be drawn therefrom, by the rightful heirs or legatees, *in the manner provided for drawing money from the treasury, in the nineteenth section of this article.*" This nineteenth section is the same as section two in the act of 1842, and is the one under discussion. Now, it is to be observed that section 21 applied as well to the estates of unknown as to known heirs or legatees, and section 23 gave jurisdiction to the courts of probate for the restoration of this rental estate to the heir, whether an unknown or known heir.

The inquiry, therefore, arises, why would the legislature, after providing for the transfer of the interests of both known and unknown heirs to the public treasury, accord to the one and not the other the right to go into

the probate court to reclaim his patrimony? Why would the legislature give the unknown heir or legatee the right under said section 23 to go into the probate court with his petition to claim the rents of his real estate paid into the treasury, and the same act deny him the same right to claim through the same court his other personal estate transferred by the probate court? Equality of right among claimants of equal merit and degree accords with the whole policy of our laws, as, also, with the genius of our institutions of government. No construction should, therefore, be given by the courts to a statute which would confer such exclusive and discriminating privileges, without the most cogent reasons, or unless the positive language of the statute admits of no other conclusion.

II. There is an exceeding fitness, on the contrary, in this jurisdiction being exercised by the probate courts. The personal estate descends directly to the administrator, he takes charge of it and administers it under the sole jurisdiction and supervision of the probate court. There is kept the record of his accounts, and all his official proceedings. The record evidence of the orders directing the transfer and showing the amount of the unclaimed estate are in the probate court. The appropriateness of the application, made in this case, is apparent; so much so that I have no doubt it was the legislative intent in the enactment of section two in the act of 1842 to restore the jurisdiction as it existed prior to 1835. Nor does this conclusion involve the denial of the jurisdiction of the circuit court, as conferred by the act concerning escheats. There is no incompatibility in the existence of concurrent jurisdiction in the two courts over the application. Instances of the kind are to be found in other cases under our statute, with appellate jurisdiction in the circuit court from the other court. The language employed in section 23, concerning escheats in the statute of 1855, is most comprehensive: "If *any person* appear within ten years　＊　＊　＊　and

claim *any money* paid into the treasury aforesaid, *as heir* or legal representative, he may file a petition in the circuit court." There is nothing in its terms restricting the right either to a known or an unknown heir.

III. But, it is insisted that the conclusion reached by us carries with it necessarily the construction that the ten years' limitation imposed by the statute respecting escheats applies as well to known as to unknown heirs. Why should it not? Why should the legislature make any such discrimination? Why allow the unknown heir, under section 23 of the administration law, to claim the proceeds of the rentals of the real estate, without any limitation, and yet not apply it to his personal estate? One of the rules laid down by this court for the interpretation of statutes is, to avoid injustice and absurdity. The statute should be so construed as to make all its parts and provisions harmonize if possible. The construction we here give accomplishes this end.

IV. Are these claimants then barred by the statute of limitations? More than ten years had elapsed when this application was made. The agreed statement concedes that some of the applicants were married women when the money was paid over and are yet *femes covert*. But which of them or how many is not stated. There is a special reservation in the statute as to married women. But there is another view of this record, which effectually meets the suggestion of the bar by limitation. It is conceded that this estate was administered, throughout, on the theory that the intestate had no known heirs. In such case the statutes of this state have always required that a special, prescribed notice should be published by the administrator, in order, if possible, to bring the fact of the intestate's death and the administration to the attention of any heir he might have. Code 1855, p. 132, sec. 22. The statute of 1824, sec. 19, p. 923, as evincive of the jealous anxiety of the legislature touching the matter of notice, provided that: "In all cases where an intestate has left no known heirs or legal

representatives, the administrator shall, in addition to the advertisement mentioned in the preceding section, cause a notice to be published in some newspaper printed in the state in which the intestate was born, if known, if not, then in one of the neighboring states or territories, and continue in the same for six weeks successively, containing the name of the intestate, and as near as may be a description of his person, together with a statement of the time and place of his death, his age and place of nativity, if known, and the appraised amount of his estate."

This provision has been retained in all the successive revisions of the statute, with the exception of requiring the publication to be made in another state or territory. This notice, it is to be observed, is in addition to the ordinary notice of the grant of letters of administration, which is designed, more especially, to bring notice to the creditors of the intestate. It is fairly inferable, from the agreed statement of facts, that the special notice to the unknown heirs was not given in this instance. The record shows no such notice found in the probate court. There had been no adjudication by the probate court, based on the assumption of the existence of such notice, which would invoke the doctrine maintained by some decisions that, in favor of the judgment of a court of record having jurisdiction over the subject matter, there should be an intendment that such notice was found by the court before proceeding to judgment.

We think the special notice prescribed by the statute to the unknown heirs, if not essential to authorize the court to order the estate into the public treasury, is essential to start the running of the ten years limitation. The statute concerning escheats requires that before the state's attorney can hold an inquisition to forfeit to the state any real estate of such heir, he shall have issued a *scire facias*, to be served by publication for six weeks, etc., requiring all persons concerned to appear and show cause. Some sort of notice is essential in all cases to

preserve the constitutional guaranty, "that no person shall be deprived of life, liberty or property without due process of law." It springs from that natural equity which makes universal law. Any "proceeding professing to determine the right of property, where no notice, written or otherwise, is given, whatever else it might be called, would not be entitled to be dignified with the name of a judicial proceeding. It would be a mere arbitrary edict not to be regarded any where as the judgment of a court." *Woodruff v. Taylor*, 20 Vt. 65; *Windsor v. McVeigh*, 3 Otto 274; Waples Pro. in Rem, sec. 64; *City of St. Louis v. Richeson*, 76 Mo. 434.

Where the state, as in this case, is claiming to hold, against common right, the private property of the citizen under the provisions of a special statute, it must show that the statute has been complied with in all its material parts. Such statutes "have always been strictly construed, and this court has spoken but one language concerning them." *Colville v. Judy*, 73 Mo. 654; *Bobb v. Woodard*, 42 Mo. 483; *Janney v. Spedden*, 38 Mo. 400; *Gibson v. Vaughan*, 61 Mo. 420; *Peake v. Redd*, 14 Mo. 79. It would be strange, indeed, that the same statute, which prescribes the two notices to be given by the administrator, one of the grant of letters, the other for the benefit of the unknown heirs, should not permit the statute of limitation to begin to run as against the general creditors of the intestate until after publication of that notice, and yet should put into motion the other statute of limitation concerning escheats, without giving the required notice to the heir.

It follows that the judgment of the court of appeals should be reversed, and the cause remanded thereto, with directions to reverse the judgment of the circuit court, and then remand the cause to the circuit court with directions to it to render judgment in favor of the petitioners as prayed for, and after ascertaining their respective shares, to issue the proper certificate to enable

them to obtain the same, as by statute in such case provided. All concur, except Hough, C. J., absent.