FRED. J. SELDEN, Plaintiff in Error, v. WILLIAM M. HALL, Defendant in Error.

### Kansas City Court of Appeals, April 5, 1886.

1. LIMITED PARTNERSHIPS—GENERAL AND SPECIAL PARTNERS—LIABILI-
   TIES OF—CONSTRUCTION OF STATUTE—CHAPTER FIFTY-SEVEN, RE-
   VISED STATUTES.—Under the statutes of this state on the subject of
   limited partnerships (Ch. 57, Rev. Stat.) it is not necessary that
   the statement provided for by section 3403 contain anything
   concerning the amounts to be contributed by the general
   partners to the capital of the partnership. The general partners
   are liable for the debts of the partnership, without regard
   to the amount contributed by them to the capital of the firm ;
   and anything relating to this, in the statutory statement, is
   mere surplusage, and in no manner affects the liability of a
   special partner. So it is not required that the statement contain
   anything as to the amount of means which each general partner
   could withdraw, for his individual use, from the means of the
   partnership, and anything relating to this, in the statement, is
   also surplusage, and does not affect the liability of a special part-
   ner, nor operate to dissolve the limited partnership, nor make the
   special partner liable as a general partner for the firm debts..
   *Ellison, J., dissents.*

2. —— CONTRIBUTION BY SPECIAL PARTNERS, WHEN TO BE MADE—
   CONSTRUCTION OF SECTION 3402.—The statute requires that the
   amount contributed by each special partner, in a limited partner-
   ship, must be in cash. Sect. 3402, Rev. Stat. But such contribu-
   tion need not be actually made *prior* to the formation of the
   partnership. And in this respect our statutes, on this subject, differ
   from the statutes of New York and Massachusetts, which *do* re-
   quire contribution *prior* to the formation of the partnership ;
   while, under our statutes, an agreement to contribute a certain sum
   in cash, on a certain day, subsequent to the formation of the part-
   nership (sect. 3403, Rev. Stat.) ; *or* where the special partner con-
   tributes a certain sum, in cash, *prior* to, and a certain sum, in cash,
   *subsequent* to the formation of the partnership, it is sufficient. So,
   under our statutes, a limited partnership is deemed to be *formed* only
   when the statement, after having been duly recorded, "shall have
   been published once a week for four successive weeks," etc, while,
   under the statutes of New York and Massachusetts, the formation

is deemed complete upon the statement being duly recorded. *Elli-son, J., dissents*.

3. ——— PAYMENT BY SPECIAL PARTNER—COMPLIANCE WITH STATUTE —CASE ADJUDGED.—Where the payment of the contribution by the special partner is made, as in this case, *subsequent* to the making of the statement, but *prior* to the formation of the partnership; and the averment of the statement is, as here, that the contribution had, at the time of the making of the statement, been paid ; the statement is not a false statement, within the meaning of section 3404, and although not literally true, according to the averment in the statement, is true in every substantial respect. The meaning of the statute is, that when the contribution has been paid by the special partner at the time of making the statement, or is *to be paid* before the formation of the partnership shall be completed, the statement should aver that it has been paid. The statutes, in requiring the statement to specify the time when the contribution is to be paid, if it is not paid when the statement is made, can refer only to the payment which is to be made subsequent to the formation of the partnership. *Ellison, J., dissents.*

4. CONSTRUCTION OF STATUTES—INTENTION TO GOVERN—SPIRIT OF STATUTE OVER LETTER.—The intention of the legislative act may often be gathered from a view of the whole and every part of the statute taken and compared together. When the true intention is accurately ascertained, it will always prevail over the literal sense of the terms. And although it may be conceded that it was the purpose of the legislature that the sworn statement of the special partner should express the absolute truth ; yet, in determining the matter, regard must be had to the general scope of the whole statute. So, if the thing sworn to be true, according to the *spirit* and aim of the statute, it is a legal truth, from which no liability can spring. Section 3403, read in connection with others, clearly enough indicates that the general aim of the legislature was to secure actual payment within the time agreed, to perfect the organization, and to enforce it by certain liabilities and penalties. *Per Philips, P. J., in separate opinion. Ellison J., dissents.*

ERROR to Jackson Circuit Court, HON. F. M. BLACK, Judge.

*Affirmed.*

Statement of case by the court.

This is an action against defendant, as a partner of the late firm of Glessner & Ross, who were manufacturers of crackers, and to which firm plaintiff sold large

quantities of flour. The defendant defended on the ground that the firm was a limited partnership, under our statutes relating to that subject, duly formed, and that he was a special partner in said firm. The plaintiff claimed that the provisions of the statute were not complied with in the formation of the partnership. This was the issue between the parties.

The partnership statement, sworn to and made by Glessner, Ross and defendant Hall, on March 10, 1883, set out that "the capital of this partnership is seven thousand and five hundred dollars ($7,500). Henry Ross, general partner, contributed two thousand and five hundred dollars in cash ($2,500); John P. Glessner, general partner, contributed two thousand and five hundred dollars in cash ($2,500); William M. Hall, special partner, contributed two thousand five hundred dollars in cash ($2,500). Cash capital paid up, $7,500."

The said partnership statement of Glessner, Ross and Hall, set out that "each of the partners hereto, both general and special, will, if they select so to do, draw annually, out of the earnings and income of said partnership business, one-third of said earnings and income for his individual use, after deducting all necessary expenses incurred."

The partnership statement was duly acknowledged on the day that it was made and sworn to ; and it was duly recorded on April 19, 1833. The said statement with the *jurat* and acknowledgment of the notary public making the same, was duly published in a newspaper in Kansas City, in which city the business of the partnership was to be located, on April 20, April 27, May 4, and May 11, in the year 1883.

The contribution to the capital of the partnership, made by the defendant, was paid in cash, six hundred dollars being paid on April 18, 1883, and one thousand and nine hundred dollars being paid April 24, 1883. The contribution made by Ross was paid in cash on April 23, 1883. Of the amount contributed by Glessner, only

$1877.65 were paid, at various times, extending from April 24 to May 4, 1883, and of said amount $1103.80 were not paid in cash.

In addition to the partnership statement, above referred to, "articles of agreement for limited partnership" were executed between the parties. That agreement may be designated as the secret agreement of partnership. By it, among other things, it was provided that the general partners should each draw from the partnership a salary of nine hundred dollars per year. And during the existence in business of said partnership the general partners drew said salaries. There was no evidence tending to show that the defendant, the special partner, had drawn anything out of the partnership business.

The trial was had before the court without the intervention of a jury. The court gave the following declaration of law:

"The court declares the law to be, that on the pleadings and uncontradicted facts shown in evidence in this case, the finding and judgment must be for the defendant."

This statement sufficiently presents the facts of the case for this report.

BOTSFORD & WILLIAMS, and LATHROP & SMITH, for the plaintiff in error.

I. Defendant having, on March 10, 1883, pursuant to section 3403, Revised Statutes, referring to limited partnerships, made and sworn to the partnership statement, stating that each partner had contributed two thousand and five hundred dollars in cash to the total paid up capital of seven thousand and five hundred dollars, which statement was false in that neither partner had *then* paid any cash whatever, and that one partner has since paid only a small part of his contribution, the defendant became liable, *as a general partner* from the beginning, for the debts of the partnership of which he

was a member, and the judgment should have been against him for the amount of plaintiff's demand. Sect. 3404, Rev. Stat.; 1 Lindley on Part. (4 Ed.) 383–5, note 1; *Haggerty v. Foster*, 103 Mass. 17; Gen. Stat. Mass. (1860) Ch. 55, sects. 2, 3, 4; *Smith v. Argall*, 6 Hill. (N. Y.) 479; *Argall v. Smith*, 3 Denio (N. Y.) 435; *VanIngen v. Whitman*, 52 N. Y. 513; *Durant v. Abendroth*, 69 N. Y. 148; 2 N. Y. Rev. Stat. 1875, p. 1153, sects. 2, 6, 7, 8 and 9.

II. The withdrawal, pursuant to the unsworn and secret agreement of Glessner, Ross, and Hall, of March 10, 1883, by Glessner and Ross each, of seventy-five dollars per month, as salaries, "was a diminution of the firm capital" otherwise than by losses in its business, and the drawing out of its means the annual amount allowed to each partner for his use, as originally agreed upon and set forth in said statement, made and sworn to by them on said March 10, 1883, and such withdrawals having commenced in March, 1883, and defendant having not only been cognizant of said withdrawals, but having in advance consented to them, the firm, as a limited partnership—if a legal limited partnership was ever formed—became dissolved when the first withdrawal was made in March, 1883; and the continuation of such partnership business, after such act of dissolution, made defendant liable *as a general partner*, for the debts of the firm contracted after the firm was so dissolved. Sect. 3405, Rev. Stat.; *Beers v. Reynolds*, 11 N. Y. 97. Our statute on limited partnerships, having been taken from the New York statute, should be similarly construed. *Batchelder v. Altheimer*, 10 Mo. App. 185; 3 Kent 35; *Skouten v. Wood*, 57 Mo. 380.

III. The conditions of the statute must be complied with as conditions precedent, and one failing to do so, for any reason, will remain liable as *a general partner*. 1 Lindley on Part. (4 Ed.) 383, and note of ten pages.

IV. The word "requested," in section nine of New York statute of 1875, is a misprint, and should be "reg-

istered." The statute is the same as that of 1829 in
that state. 6 Hill (N. Y.) 479 ; 3 Denio (N. Y.) 435.

V. The word "each," used in section 3405, Re-
vised Statutes, in the plain, ordinary, and usual sense of
the word, its place in the statute, the context, and the
object sought to be accomplished, all indicate that it re-
fers to the partners, general and special alike, and that it
was the intention of the legislature to prohibit the dimin-
ution of the capital of a limited partnership by the gen-
eral partners in a manner not contemplated by the
original agreement and sworn statement of the partners,
made at the time of the formation of the partnership.

WARNER & DEAN, for the defendant in error.

I. The statute requires a reasonable construction.
The commendable objects and beneficial results intended
by it, should not be narrowed by any technical construc-
tion of it. 3 Kent's Com. 35 ; Parson's Part. 573.

II. The defendant Hall, who is a special partner,
not only *substantially*, but literally complied with the
statute in regard to the payment of the money contrib-
uted by him. In the light of the *preliminary conditions*,
imposed by the statute, before *legal birth* was given
the partnership, the sworn statement was not false.
The co-partnership, under the statute, *has no life*,
*is not formed, and is merely ethereal*, until all the *pre-*
*liminary* conditions essential to its birth are performed.
It is not "deemed to be *formed*" until the record
of statement is made, nor until such statement shall
have been published, at least once a week for four suc-
cessive weeks, in a newspaper. The statement was
sworn to March 10, recorded April 19, and published
April 20, 27, May 4 and 11, 1883. Thus, according to the
*express* terms of the statute, this partnership was not
"formed until" May 11, 1883. The true construc-
tion of our statute is satisfied, if in the *interim* between
the time of the sworn statement and the birth of the
partnership, the special partner actually contributes his

cash, although the statement recites that the cash is paid in. The statement relates to the date of the "forming" of the partnership, and not to its inchoate state when statement is made.

III. The statutes of this state, and those of New York, although the same in principle, are nevertheless widely different, so that the cases from New York are inapplicable. Under the statutes of New York the partnership is formed *at the time of filing and recording of the papers,* without reference to the subsequent publication. They make the publication merely a *condition subsequent* to the formation of the partnership. Our statute makes the publication a *condition precedent to birth.* In *New York, upon the recording of the papers,* the world is informed that a special partnership is formed, *and to deal with it at once accordingly.* In *Missouri* the public are cautioned that no special partnership is in existence "*until*" notice is published once a week *for four weeks*, and to act accordingly. The two statutes are wide apart on the question under consideration.

IV. The only object of our statute is to limit the general liability of a so-called special partner, providing he honestly fulfils its conditions *as to himself.* Other matters in the statement, not required by the statute, are mere surplusage. Omission, neglect, or falsity, in the performance of the conditions *imposed by the statute,* incurs the vengeance of the penalty ; not so as to other matters not so required. Falsity in the surplusage cannot be punished by the statute, but only general principles of estoppel.

V. Section 3405, Revised Statutes, speaking of a diminution of the capital, refers only to *special partners*, and it is not shown that *Hall* ever drew out a cent.

VI. Where the special partner is a general partner in another firm, to which the insolvent partnership is indebted, the debts due to such firm are not to be postponed on account of the special partner's interest therein.

*Hayes v. Bement*, 3 Sandf. (N. Y.) 394; *Hayes v. Heyer*, 35 N. Y. 326.

VII. The defendant Hall has, in every way, substantially complied with the statute.

HALL, J.—The sections of our Revised Statutes touching the questions involved in this case, are as follows:

"Section 3402. *General and Special Partners— Their Liability.*—Such partnerships may consist of one or more persons, as general partners, with the powers and responsibilities of partners, and one or more persons as special partners, who, contributing a specified amount of cash actually paid in as capital, shall not be personally liable for the debts or responsibilities of the partnership, except as herein mentioned, nor have any power to bind the partnership, or manage its affairs.

"Section 3403. *Partners to Make Written Statement—Penalty for False Statement.*—The persons desiring to form such a co-partnership shall sign a written statement showing the name and place of residence of each partner, the name or style of the firm, who are general partners, and who are special partners; the amount of cash actually contributed by each special partner, and the amount agreed to be contributed by each special partner, if any and if not paid in, and when it is to be paid in; the general nature of the business to be transacted, where it is to be transacted, and the duration of the partnership, and the amount of means each special partner may annually withdraw for his individual use from the means of the partnership; which statement shall be verified by affidavit of one or more of the partners, and if false, the affiant, or affiants thereof, knowing it to be false when made, shall be deemed guilty of perjury, and be punished with the penalties affixed to that crime.

"Section 3404. *Statement and Affidavit to be Recorded.*—Such statement and affidavit shall be acknowledged or proved, and recorded in the office of the

recorder of deeds of the county, or counties, where the business is to be transacted, in the same manner as deeds are acknowledged, proved and recorded. No limited partnership shall be deemed to be formed or allowed, until such record is made, nor until such statement shall have been published at least once a week for four successive weeks in a newspaper printed in each of the places where the business is to be carried on, if there be any such paper published there, and if not, then in the newspaper published in the place nearest thereto. If any part of such statement be false, the special shall be liable as general partner."

It is provided by section 3405 that a limited partnership shall be deemed to be dissolved when there is a diminution of the firm's capital otherwise than by losses in its business, "and the drawing out of its means the annual amount allowed to each partner for his use, as originally agreed upon and set forth in said statement, and if the partnership be carried on after such an act of dissolution, every special partner cognizant thereof shall be deemed a general partner, and be liable as such."

There are two contentions made by the counsel of the plaintiff which we shall dispose of in the outset. Those contentions are: First. That the statement of partnership made, sworn to, acknowledged, recorded and published, was false in so far as it related to the contributions to the capital of the partnership made by the general partners, and that thereby the defendant was made liable as general partner; and, second, that the withdrawal, pursuant to the secret agreement of partnership, by Glessner and Ross, each of seventy-five dollars per month, as a salary, was a diminution of the partnership capital "otherwise than by losses in its business, and the drawing out of its means the annual amount allowed to each partner for his use, as originally agreed upon and set forth in said statement," made and sworn to on March 10, 1883 ; and that, such withdrawals having commenced in March, 1883, the partnership as a

limited partnership became dissolved then, and that the continuation of the partnership business after the act of dissolution made the defendant liable as a general partner for the debts of the partnership contracted after the dissolution.

Under the statutes it was not necessary for the statement to contain anything concerning the amounts to be contributed by the general partners to the capital of the partnership. The general partners were liable for the debts of the partnership without regard to the amounts contributed by them to the capital of the firm. The statement, in so far as it related to the amounts contributed to the capital of the firm by the general partners, was mere surplusage. That the statement, in that respect, was false, could in no manner affect the liability of the defendant *as a partner*. The statutes do not so provide. Outside of the statutes there is no principle of law that could have such effect.

And the same may be said concerning the statement in so far as it related to the amount of means which each general partner could withdraw, for his individual use, from the means of the partnership. The statement, in that respect, was surplusage, and the general partners had the same right to withdraw from the means of the partnership, as against a creditor of the partnership, that they would have had if the statement had been silent upon the subject.

The question in this case, and the only question, is : Was the statement sworn to on March 10, 1883, false, in the light of the facts, in respect to the contribution to the capital of the partnership made by the defendant, the special partner?

The amount contributed by each special partner in a limited partnership, must be in cash. Sect. 3402. But such contribution need not be actually made prior to the formation of the partnership. And in this respect our statutes on this subject differ from the statutes of New York and Massachusetts, to cases construing which our

.attention has been called.   Under the New York and Mas-
sachusetts statutes the contribution by the special partner
must be paid in cash, and paid prior to the formation of
the partnership.   Under our statutes, it will be per-
.ceived, it is not necessary for the special partner to make
.an actual contribution prior to the formation of the part-
nership; an agreement to contribute a certain sum .in
.cash on a certain day, subsequent to the formation of
the partnership, is sufficient.   Sect. 3403.   Or, the
.special partner may contribute a certain sum in cash
prior to, and a certain sum in cash subsequent to, the
formation of the partnership.   *Id.*

Under our statutes a limited partnership is deemed
to be formed only when the statement, after having been
.duly recorded, "shall have been published at least once a
week for four successive weeks in a newspaper in each
.of the places in which the business is carried on, if there
be any such paper published there.   *   *   *"   In this
.respect, also, our statutes differ from the New York and
Massachusetts statutes.   Under the Massachusetts stat-
utes it would appear that the limited partnership is
.deemed formed upon the statement being duly recorded.
*Haggerty et al. v. Foster*, 103 Mass. 19.   And in New
York the formation of the partnership is deemed com-
plete upon the statement being duly recorded.   *Van
Jugen v. Whitman*, 62 N. Y. 515.

By section 3404 it is provided that, if any part of the
.statement be false, the special partner shall be liable as a
.general partner.   By the statement it was averred that
the defendant had contributed two thousand and five
hundred dollars, in cash, to the capital of the partner-
.ship, while, in fact, at the time of the making
.of the statement, swearing to and acknowledg-
ing it, the defendant had not paid ·any part of his
.contribution.   The defendant paid only part of his con-
tribution prior to the recording of the statement; and
.he paid the balance of it prior to the second day of its
.publication.

The question is, did the payment of the contribution by the defendant, subsequent to the making of the statement, but prior to the complete formation of the partnership, satisfy the averment in the statement that the contribution had, at the time of the making of the statement, been paid? or was the statement false, within the meaning of section 3404?

The statement required by the statutes, in every substantial respect, must be strictly true. Under the statutes the time of payment of his contribution by a special partner is material only in so far as it may precede or succeed the formation of the partnership. It can concern no one to know at what point of time during those acts necessary to form the limited partnership the special partner's contribution was paid. It is only material to know that such contribution was paid prior to the formation of the partnership, if such be the fact. If such be not the fact, it is material to know at what specified time after the formation of the partnership the contribution is to be paid.

Had the statement of the partnership named the amount of the contribution to be made by the special partner, and had averred that such contribution would be paid prior to the recording of the statement, the averment would have been sufficiently definite as to the time of the payment of the contribution, because, as has been said, the particular time, prior to the recording of the statement, at which such payment was to be made, was immaterial and unimportant; and such averment would have been satisfied by payment of the contribution at any time prior to the recording of the statement, and even by payment made prior to, or at the time of the making of the statement, because such latter payment, although not literally true, according to the averment in the statement, would have been true in every substantial respect. The payment would have been made prior to the recording of the statement, prior to the formation of the partnership, prior to its legal existence, and prior to

the time at which any one dealing with the partnership could have had an interest in the payment being made.

Now, would not the averment in the statement supposed, have been satisfied by the payment of the contribution after the recording of the statement but before the completion of its publication?

Such payment would not have been literally in accordance with the averment, but it also, in every substantial respect, would have satisfied the averment. Because, had the statement named the amount to be contributed by the special partner and averred that such contribution would be paid prior to the completion of the publication of the statement, the averment as to the time of the payment of the contribution would have been sufficiently definite, for the reason that until the completion of such publication the partnership could not and would not have been formed. The averment, then, that the contribution would be paid prior to the recording of the statement, would have been more particular and definite than was required by the statutes, and being so in an immaterial respect, the want of its literal and strict truth could not have been held to constitute it false within the meaning of the statutes. The payment by the special partner of his contribution at any time pending the making of the statement, or at any time prior to the formation of the partnership must be held to satisfy an averment that the contribution would be paid at a specified time during such formation. And so we hold with reference to the averment actually made in the statement, that the contribution made by the special partner had been paid at the time of the making of the statement. In fact, we think that the meaning of the statutes is that, when the contribution has been paid by the special partner at the time of the making of the statement, or is to be paid before the formation of the partnership shall be completed, the statement should aver that it has been paid. If the contribution had not been paid when the statement is made, but is to be paid

before the partnership can have a legal existence, and is in fact so paid, the object of the statutes is accomplished, and no one is concerned in knowing at just what time during the formation of the partnership, the contribution was paid. If, however, the contribution is to be paid in whole or in part after the formation of the partnership shall have been completed, it is material to know and the statement should aver the exact time at which such payment is to be made. The statutes, in requiring the statement to specify the time when the contribution is to be paid, if it is not paid when the statement is made, can refer only to the payment which is to be made subsequent to the formation of the partnership.

We have carefully examined and considered the cases in New York and Massachusetts, cited by the counsel for plaintiff. With one exception we do not think that those cases support the contention made by counsel for plaintiff. But the case of *Durant v. Abendroth* (69 N. Y. 148), would seem to support that contention. Speaking for myself, I am unable to reconcile the views herein expressed, with that case, notwithstanding the differences herein pointed out between our statutes and the statutes of New York: In that case there was a divided court, and I have not been able to believe that the application of that case to our statutes would be in accordance with reason or justice.

Judgment affirmed. Philips, P. J. concurs in the result; Ellison, J., dissents.

ELLISON, J., DISSENTING.—I do not agree to any portion of the opinion of the majority. The fact that the statute is an important one and has not before been considered in this state, justifies me in giving my reasons for non-concurrence. If one desires to enter into a business association with others he may do so at his pleasure, but if he wishes to secure to himself certain

exemptions not common to an ordinary partnership, he may do so only "upon the terms and subject to the conditions and liabilities in this chapter." Section 3401. This statute "of limited partnerships" is in derogation of the common law and must, therefore, receive a strict construction, if indeed there be room for construction of a statute so positive, so plain and so explicit in all its parts. It is but the plain arbitrary expression of the legislative will, and "equitable constructions are never given to mere arbitrary regulations of matters of public policy." Sedgwicks, Construction of Statutes, 251. "The rule is, as we shall constantly see, cardinal and universal, that if the statute is plain and unambiguous, there is no room for construction or interpretation. The legislature has spoken; their intention is free from doubt, and their will must be obeyed." *Ib.* 194. The Supreme Court of the United States has said in *Fisher v. Blight* (2 Cranch 358 399), that "where a law is plain and unambigous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and, consequently, no room is left for construction."

The admitted facts in this case are that the defendant and his associates made the statement, set out in the opinion, under solemn oath.

The further admitted fact is, that all the material portions of this statement are false. It will be surprising to those who may examine this case to say it is admitted that the sworn statement was false and known to be so by the affiants, when made. Yet it is nevertheless true, that instead of their having contributed $2,500 each, as they each made oath, there was not a farthing contributed, or set apart, or pretended to be, either directly or indirectly. The statement was made March 10, 1883, while the payments therein sworn to have been already paid in, were not made till the latter part of the following month; when on April 23, Ross paid in his $2,500, April 18, defendant paid in six hundred dollars,

and April 24, $1,900, and by Glessner on said last date $1877.65 ; $1103.80 of which was not in cash.

It is said the statute does not require a statement of what the general partners contribute, nor what they will draw out, and that this portion of the statement should be treated as surplusage. Passing that for the present, I will look merely to what has been stated, and what is required to be stated, by defendant, relating to himself as a special partner. He says, at the time he is making the statement and swearing to its being the truth, that he contributed, that is, he has already contributed, $2,500.00 ; the word "contributed," refers to the past, something already done. He says the "cash capital paid up" is $7,500.00, of which his forms one-third. No portion of this statement was true, and he knew it was untrue when he subscribed and swore to it. But it is said it was substantially true. This expression can mean nothing else than that the substance of it was true, when in fact it was false in every particular. The substance of the statement and the literal statement here, are one and the same. He swore he paid it and had not, that was all there was of it.

He recorded this sworn statement April 19, when he had only paid six hundred dollars of the $2,500, the day before ; he, therefore, recorded the falsehood. He published the statement April 20, and he did not pay the balance of the $2,500, till April 24 ; he, therefore, published the falsehood. So I repeat, that notwithstanding the statute is so particular to have this statement contain the truth, that it holds ajar the gates of the penitentiary for him who falsifies it, yet a statement, conceded to be false in every material particular, is held to be sufficient.

An affidavit that money was paid on March 10 is not rendered true by a payment six weeks later. It irresistibly follows from the majority opinion that neither statement nor affidavit is necessary, for I feel safe in asserting my brethren would much more quickly grant immunity to this defendant, if he had made no affidavit

at all, but had paid the money, than they have in this case, where he makes a false one. For any one will see that it is better not to swear at all, than to swear falsely. I take it, the opinion of the majority stands alone in all judicial history in holding, that where an affidavit is a necessity, a false one will suffice.

The fact is, there is no statement or affidavit, as to defendant's payments, in evidence. His affidavit refers to payments on March 10 or prior, while the testimony is as to payments made in the latter part of April. I must assume that the payments spoken of in the affidavit and those in the testimony are not the same. In the first place they cannot in fact be the same; that is impossible; and they cannot have been meant to be the same, for that would convict defendant of perjury.

But while, as before stated, this statute has not been considered in this state, it has frequently been presented to the courts of other states.

In the case of *Smith v. Argall* (6 Hill, 479), it was decided by the supreme court of New York that "where the terms of the partnership were published in two newspapers, but in one of them the sum contributed by the special partner was stated to be *five* thousand dollars, when, in fact, it was only *two* thousand; *held*, that though this occurred through the mere mistake of the printer, and the other requisites of the statute had been fully complied with, the associates were liable as general partners. To maintain an action against the associates as general partners in such case, the plaintiff need not prove that he was actually misled by the error in publishing the terms of the partnership." That decision was rendered in 1844. The case went to the court of errors, and the decision of that court affirming the judgment of the supreme court may be found in *Argall v. Smith* (3 Denio, 435.) It was there said that, "if they fail in this (publication) the consequence is declared in plain terms: 'the partnership shall be deemed general.' In this the courts have no discretion. They have only to

declare the will of the legislature. The publication of different 'terms' in two papers, in one of which they are untruly stated, can be no better than to omit a publication altogether. Where a statute creates new rights, exemptions, and immunities, dependent upon a compliance with precedent conditions; that such 'conditions must be substantially and even strictly complied with needs the citation of no authority to prove."

In the case of *Van Ingen v. Whitman* (62 N. Y. 513), in giving judgment against the defendant, Folger, J., used the following significant and explicit language: "The amount contributed by the special partner is an essential part of the terms of the partnership. (*Id.*) *The mode of contribution is just as explicitly fixed as that there shall be a contribution; and it is just as explicitly required that the mode of contribution prescribed by the statute shall be followed, and shall be averred in the affidavit, as that there shall be an amount of contribution, and that the true amount shall be stated.* To guard against unsafe practices, and to secure the public against even innocent deception or mistake, the statute demands this."

In that case the same argument was urged before the court as to the statement being substantially true as is made by the majority here. In that case there was much more reason to say the statement was substantially true than in this, for there the sum was actually contributed, at the time stated, in credits admitted to be good and convertible into cash. In this case there was no truth in the statement whatever, and, as stated, before, there was no money or other things paid, directly or indirectly. The italics in this quotation are my own, and it is to call attention to the fact that the mode of contribution must be followed explicitly.

Again, before the same court, this question was considered in *Durant v. Abendroth* (69 N. Y. 148). In that case the facts were as follows: The defendant, Abendroth, defended on the ground that he was a

limited partner in the firm of Griffith & Windram, while the plaintiff, who was a creditor of the firm, claimed that defendant was a general partner with the other two members of the firm. The certificate for the formation of the limited partnership was made, acknowledged, sworn to and filed December 23, 1870, and stated that the partnership was to commence on the first day of January, 1871. The payment of the special partner's contribution was made by a check drawn by him for the amount thereof the same day the certificate and affidavit were made, but the check was post-dated to December 31, 1870, and was paid as soon as the check was sent to bank, January 2, 1871, the first day of January, 1871, being on Sunday. The New York court of appeals, per Rapallo, J., in giving judgment against the defendant, used the following language: "The certificate and affidavit speak as of the day of their date. They are not promissory, but state what had been done. Unless, therefore, the capital had on that day been actually paid in cash, the statements cannot be said to be true. Neither the honest intention of the parties that it should be paid at or before the time appointed for the commencement of the partnership, nor their good faith manifested by the actual payment in cash at that time can remedy the defect, if the payment had not been actually made in cash when the certificate and affidavit were made and filed. The statute peremptorily requires an affidavit that the capital has been actually paid in cash, and withholds its protection from the special partner if the affidavit be not true. However honest the intentions of the parties may be, if this affidavit is not absolutely true the consequences prescribed by the statute must follow, and they cannot be averted by a subsequent payment, nor by the consideration that no injury resulted to any creditor from the affidavit not being true when made. The payment in this case was made by a check of the

special partner, dated, and, therefore, payable, on the thirty-first of December, 1870. This clearly was not cash on the twenty-third, when it was delivered to the general partners and the affidavit was made. The capital was in fact paid on the second of January, but no affidavit of that payment was filed as required by the statute. The affidavit prematurely made on the twenty-third could not be made true by that subsequent payment. The parties have made a careless, though no doubt innocent, mistake; but they have failed to comply with the statute, and the special partner is, therefore, deprived of its protection.''

This case, if possible, more emphatically than the others meets every argument advanced in the case before us. Notwithstanding the check given was actually paid on the day the partnership began and that no injury resulted to any creditor, the defendant was held liable as a general partner. The question has also arisen in the supreme court of Massachusetts, in the case of *Haggerty v. Foster* (103 Mass. 17), where it was held that, ''it is wholly immaterial that the transaction at the time was honestly intended and understood by the parties to be sufficient; that the securities actually transferred afforded the means by which their cash value *was in fact subsequently realized*, or that creditors were not actually defrauded. The statute is plain and explicit. It requires payment to be made when a certificate is signed, acknowledged and recorded as the foundation of the partnership; and this certificate must recite what has been done; not that which is executory.''

But it is said that the statutes of New York and Massachusetts are not like ours, and by this assertion the majority relieve themselves of the obligation to follow the interpretation given to these statutes. For it is familiar law, that when a statute of another state is incorporated in our law, we adopt its construction. A perusal of our statute in connection with that of New

York will show them to be identical in object and meaning, though not literal copies. The St. Louis court of appeals so thought in 10 Mo. App. 185. It is literally true that every requisite to a special partner's exemption from general liability prescribed by the New York statute is demanded by our statute. Our statute *in addition*, says that if the money is not actually paid by the special partner when the statement is made, he shall state *when it will be paid*. And while each requires an affidavit, our statute adds, that if it be false when made, the affiant shall be guilty of perjury, a consequence which would have followed without being here inserted.

Our statute does also say that the partnership shall not be deemed formed until publication is made, while the New York statute says it shall not be deemed formed until the statement is recorded and the affidavit filed. Yet the succeeding New York section requires publication when recorded. It is apparent that the special partner in New York would have no exemption from his general liability except the publication be made as required ; indeed, such is the express decision in 6 Hill, *supra*, and so far as exemption from liability as a general partner is concerned it does not take place in either state until publication. From this, then, it will be seen that the statutes are *identical*, except that ours permits payments after making the statement, but requires it to be so *stated* and sworn to.

Again, in the statement defendant made oath to the following :

"Each of the partners hereto, both general and special, will, if they select so to do, draw annually out of the earnings and income of said partnership business, one-third of said earnings and income for his individual use, after deducting all necessary expenses incurred in conducting the said limited partnership business."

Yet on the same day, these same affiants privately enter into a secret agreement containing the following provision:

" It is agreed hereby that the general partners shall draw annually a salary of nine hundred dollars per year for each of them, but that each general partner shall be charged up for each day not actually engaged in the transaction of the firm business at the rate of three dollars per day. "

This latter stipulation is in direct violation of section 3405, which provides that:

"The partnership formed under this chapter shall be deemed to be dissolved when there is a change in its partners or in the nature of its business, or a withdrawal of any of its capital, or a diminution thereof, *otherwise than by losses in its business and the drawing out of its means the annual amount allowed to each partner for his use, as originally agreed upon and set forth in said statement,* and if the partnership be carried on after such an act of dissolution, every special partner cognizant thereof shall be deemed a general partner and be liable as such."

This secret agreement is positive in its terms and permits the withdrawal of eighteen hundred dollars per annum by Glessner & Ross regardless of whether the concern is making or losing money.

The secret agreement is in direct violation of the sworn statement, for, by the latter, they could only elect to withdraw one-third each of the *net* earnings and income, leaving the original capital intact; by the secret agreement they could each draw nine hundred dollars a year regardless of whether there is a net income; and thus sap the original capital.  They had the same right and power to make the sum $2,500 each, as well as nine hundred dollars, and thus, if there were no net earnings, wipe out the whole capital the first year and let creditors make the most of it.

It is, however, said in the majority opinion, that the statute does not require a statement from the general partners as to what they will draw out, nor as to what they contribute and that the statement made may be regarded

as surplusage.    But it must be borne in mind that it is a
statement made by defendant; he states what the others
will do, and by a contemporaneous writing agrees in effect
to nullify it.    I hold this to be fraud upon his part,
which withdraws from him the privileges of a special
partner.    It is a deception to the public and a most
material one.    In the public statement he says the orig-
inal capital shall not be touched by either of them.    In
the secret one, he says they may gradually draw out all
the original capital and run the business without it.

So while the statute does not demand that the state-
ment shall contain the amount contributed by the general
partners, yet defendant for some purpose, *does* so state.
The opinion excuses him for the statement in regard to
his own payments because he did afterwards make them.
But defendant makes affidavit on March 10, that Glessner
*has* paid $2,500 ; when, in fact, he has not paid that
amount to this day.    He has only paid, in cash, $773.85, and
this on April 24.    He paid, in goods, which does not satisfy
the law or the statement, $1,103.80 ; leaving $622.35 not
yet paid.    This portion of the statement can not be treated
as surplusage.    It is common knowledge that the fact
of any business institution having paid up capital gives
it position, standing, and credit with the business world
and enhances the security of those dealing with it.    This
is so well known and recognized that laws are passed re-
quiring many institutions to have certain paid up capital.
Here we have defendant advertising under his oath that
there was a certain amount of paid up capital, not true
when the affidavit was made, not true when it was re-
corded, not true when it was published, and not yet true.
This was a fraud practiced under the forms of the statute
and has the effect of withdrawing from defendant the
immunity the statute only gives to those who comply
with its terms.

Since the above was promulgated, the concurring
opinion by Philips, P. J., has been filed.    I deem it
proper to add that I discover nothing in it to change the
views already expressed.    The illustrations given do not,

in my judgment, add to the force of the position taken. If Hebrews or Gentiles were debt paying commodities, as money is, the illustration would be more apropos. So with the illustrations as to the payment of one thousand dollars at given times, it might well be said that a payment is a continuing thing. An obligation paid or discharged yesterday, is still paid and discharged to-day; while an obligation paid to-day, may not have been paid yesterday. But if it should be conceded, which I by no means do, that there was no good reason for following a plain, unambiguous legislative act, yet, heed given to the maxim, so often called upon by the supreme court of this state, that "the statute stands for a reason," would solve this question with ease, as well as render obedience to a proper exercise of legislative power.

PHILIPS, P. J., concurring. — I concur in the result, and the general reasoning of the opinion of Hall, J. Without attempting to set forth other arguments, which occur to my mind in support of the conclusion reached by him, I will simply add: that among the recognized rules for the proper construction of statutes are the following: The intention of a legislative act may often be gathered from a view of the whole and every part of a statute taken and compared together. When the true intention is accurately ascertained it will always prevail over the literal sense of the terms. When the expression of a statute is special or particular, but the reason general, the special shall be deemed general, and the reason and intention of the law-giver will control the strict letter of the law, when the latter would lead to palpable injustice, contradictions, and absurdity. *In the Matter of Bomino's Estate*, 83 Mo. 441.

It may be conceded that it was the purpose of the legislature that the sworn statement of the special partner should express the absolute truth; yet in determining this matter regard must be had to the general scope of the whole statute. So, if the thing sworn to be true, according

to the spirit and aim of the statute, it is a legal truth, from which no liability can spring.

Our statute differs materially from those of the states of Massachusetts and New York, relative to this issue, in that ours contemplates and allows an agreement to pay in the future, whereas theirs requires that the payment shall actually have been made in cash at the time of making the affidavit.

To sustain the logic of appellant's contention it must be asserted and maintained: that if the statement of respondent, when sworn to, had been that he would pay one thousand dollars ten days thereafter, and it were developed at the trial that as matter of fact he had paid one thousand dollars the day before he had made the affidavit, in contemplation of the statute, the affidavit was false, and the affiant would not only be bound as a general partner, but could be sent to the penitentiary as a perjurer. If such a construction would not lead to palpable injustice and absurdity it would be difficult to conceive one which would.

Carried to its logical sequence, in sticking in the bark of the literal words of the statute, had the respondent sworn to a statement on the first day of the month that he would pay one thousand dollars on the tenth day thereof, and the fact should appear at the trial that he paid on the ninth day of the month, he would be held as a general partner, and be challenged as a perjurer bound for the penitentiary. Such a construction would not only lead to injustice and absurdity, but would shock humanity itself.

By section 3408 of this act, it is declared, that: "If the whole or any part of the capital advanced by a special partner be by him withdrawn, or if he fail to actually contribute toward the capital *as by him agreed*, he shall be liable as a general partner."

It seems to me that this section, read in connection with others, clearly enough indicates that the general aim of the legislature was to secure actual payment, within

the time agreed, to perfect the organization, and to enforce it by certain liabilities and penalties.

And, therefore, where the party did actually pay, as agreed, before the partnership was completed and took effect, and before any rights, duties or obligations had attached, or could attach, the object of the statute would be accomplished. "A thing within the intention of the legislature in framing the statute is sometimes as much within the statute as if it were within the letter." *In re Bomino, supra.*

To hold this respondent as a general partner, on the facts of this case, when he had paid his money, according to agreement, before the completion of the partnership, before any one had dealt with the concern, or any right or obligation arose, savors so much of injustice and spoliation, that I have been unable to find sufficient reason, or authority, based on a parallel statute, to satisfy my judgment and conscience.

In respect of the point made on the fact that respondent's statement was not true, touching the amount paid by the other parties, and the sums to be drawn out by them, it is, it occurs to me, sufficient to say, that those were matters and facts not required by the statute to be stated. It was mere surplusage. The legislature saw fit to prescribe that certain facts should be sworn to, and attached a certain liability for falsely stating these, and none others.

And, necessarily, where the plaintiff invokes the statute, to fix upon the defendant the liability, he must stand or fall by the statute. If the defendant had stated that the other partners were millionaires, or Hebrews instead of Gentiles, native instead of foreign born, and such statements had been false, could it be maintained that he could be held as a general partner on that account? If this were an action *on the case* for fraudulent representations, and the like, whereby, etc., the falsity of such statement might become material. But it has no place in this action.